Beverly Fonville VAN ZANDT, Appellant,

v.

W. K. VAN ZANDT, Appellee.

No. 15521.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Jan. 22, 1970.

Rehearing Denied March 5, 1970.

Hamblen & Hamblen, Presley E. Werlein, Jr., Houston, for appellant.

George W. Eddy, Edgar E. Townes, Jr., Houston, for appellee.

BELL, Chief Justice.

In this case the trial court awarded a divorce to appellant and made a division of the property claimed by the parties. The only question on appeal is whether there was error in the jury verdict when the jury failed to find that certain property came to appellant in settlement of her deceased's mother's estate.

Appellant contended in the trial court by proper pleadings, and contends here, that her father, R. H. Fonville, in 1937, gave her $2500.00 with which she purchased five acres of land on Sage Road in Harris County. It is her position that this $2500.00 was given her in partial settlement of her interest in her deceased mother's estate and thus the land purchased with such money became her separate property. The tract was sold in 1963 for $438,000.00.

The net proceeds from the sale, less taxes and expenses, are now represented by assets in an Investment Advisory Agency Account with Texas National Bank of Commerce.

Appellee contends that the Agency Accounts are community property or at least jointly owned.

The court submitted Special Issue No. 3 to the jury, which read as follows:

"Do you find from a preponderance of the evidence that the sum of $2500.00 paid to William H. Wilson and wife as consideration for the conveyance of the 5 acres of land at the northwest corner of Sage and Westheimer, known as 2530 Sage Road, was delivered to the Plaintiff, Beverly Fonville Van Zandt, by her father. R. H. Fonville, in partial settlement of her interest in the estate of her deceased mother, Lillian Henrietta Racke Fonville?"

The jury answered, "We do not."

In its judgment the court divided the Investment Advisory Account equally between the parties.

Appellant asserts three points of error, contending as follows:

1. The court erred in submitting the issue because there was no competent evidence to support its submission, but the evidence conclusively and as a matter of law established the affirmative of the fact inquired about.

2. The answer of the jury is so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong.

3. Where a case is tried on the wrong theory justice requires a reversal and remand for retrial. The contention here is that appellee tried the case on the theory that the property was community when it could not as a matter of law be such but was either the separate property of appel-

lant or was jointly owned by the parties, the interest of each constituting a part of their respective separate estates.

Appellant was the daughter of R. H. Fonville and Lillian Henrietta Racke Fonville. Her mother died intestate in 1916 when appellant was seven years old. She had a younger sister, Irma, who is now Mrs. Julius Garrett. Mr. Fonville married Clara McCormick in 1925. To this marriage was born a daughter, Clarita, who is now Mrs. Neil Buie.

In July, 1916, Mr. Fonville received authority from the County Court to act as community survivor. He filed with the court an inventory of the community estate. It, together with its appraisal, was approved by the court. It showed several pieces of real estate valued in the aggregate at $14,900.00, personal property valued at $7,700.50 and cash of $500.00. The largest item of personal property was "one drug store, stock, etc." valued at $4,150.50. The other personal property consisted of notes.

Appellant and appellee were married in 1935.

On December 30, 1937, a deed to the five acre tract of land above mentioned was executed by Wm. H. Wilson and wife, as grantors, and appellee, W. K. Van Zandt, was named as grantee. It is this conveyance that gives rise to the real controversy here involved. In the latter part of 1938 the parties built their home on the tract employing borrowed money. This money would be community property. There is no controversy concerning the status of the improvements.

The evidence all shows that the $2500.00 used to pay the purchase price of the five acre tract was furnished by Mr. Fonville by delivery of his check to appellant. No contention is made that this was a loan. We suppose appellee's contention that the land became community property is based on the presumptoin that arises from the fact that it was acquired during the marriage under a deed in the form above noticed. However, under all the oral testimony in the case, it was either the separate property of appellant or was equally owned as a part of the separate estate of the parties.

Appellant testified that her father handed her the money with which to pay for the property. She did not remember whether it was in cash or a check though as she best remembered it was represented by her father's check. She took the check to Judge Wilson from whom the purchase was made. She attended to having the deed executed. The reason appellee's name appeared as grantee was because he had told her if the deed was not in his name, he would not be able to borrow money with which to build their house. Later when the money was borrowed to build the home, and the mechanics' lien and deed of trust were executed, appellee handled the transactions though appellant joined in their execution.

Appellee testified in person and part of the testimony he had given in a deposition was read into evidence by appellant's counsel. In the deposition testimony he stated that the estate of Mr. Fonville and his first wife, as shown by the records, was small. He stated the distribution to appellant and her sister was accomplished before his marriage to appellant. (This was incorrect because in 1942 Mr. Fonville conveyed to his two daughters real estate appearing on the inventory.) He then said that "Mr. Fonville being partial to Beverly and Irma, frequently handed them or gave them money and things of value with the joking remark, and with the ever-present smile, "This is a part of your mother's estate."

After stating that until three or four years before the time of the deposition he and appellant occupied as their home the property on Sage Road, appellee was asked, "Did you own that property?" He answered, "The property was acquired by deed in my name. It remained in my name until the date of the sale to Lewis Funeral

Home." The property was bought from Judge Wilson for $2500.00. When asked the source of the $2500.00, appellee stated, "Prior to the purchase * * * Mr. Fonville told us that he would be very glad to give us a lot so we might build a home on it. He set an amount of some $4,000.00. We looked at lots in various parts of the city and * * * we decided it would be advantageous to buy acreage * * *"

In the testimony given in person at the trial appellee was asked who first brought up the matter of purchasing the land and he stated it was by mutual agreement with appellant. He and appellant looked over several sites and agreed on the Sage Road property. When the property was actually transferred he was not present. He did not procure the deed. Mr. Fonvile furnished the money. He denied he had any discussion with appellant in which he told her he should be named as grantee in the deed from Judge Wilson.

Documentary evidence reflects joint action by the parties with regard to the property. The mechanics' lien contract for the construction of the home and the deed of trust to secure money borrowed to construct the home were executed by both parties. In 1959, when the parties were considering selling, appellant wrote appellee, "Mr. Saidus came down yesterday and said he had a buyer for our place. How much do you want? He thinks we should sell. He said for you to phone him." In 1960 the parties executed a "listing" agreement to Said·· us and Rowe, giving them the exclusive right to sell the property. They both, in 1963, executed a contract to sell. The deed to Lewis Funeral Home in 1963 referred to · the consideration as paid to "us" and to the $438,000.00 "paid to Grantors." In May, 1963, the parties entered into a "Safe Keeping Agreement" with the Texas National Bank of Commerce with regard to the money received. It was signed by both parties and required that any instructions to the Bank must be in writing and signed by both parties. On May 15, 1963, an "Invest-

ment Advisory Agency Agreement," involving the net proceeds from the sale was entered into with the same Bank. In it the parties together were referred to as "Principal".

In January, 1966, appellant attempted to have the assets of the Agency Account transferred to a trust over which she had sole control. She did this on the advice of a representative of the Bank that the assets belonged to her. Appellant notified appellee of the action. Appellee demaned a termination of the trust and a return of the assets to the joint account. The Bank acceded to the demand. In 1945, while appellee was serving in the United States Navy, Mr. Fonville wrote him a friendly letter and at one point in it referred to "your nice home".

Mr. Fonville died testate in 1954. For some reason, which is not reflected by the record, his will was not offered for probate. Instead of having the will offered for probate, his widow, Mrs. Clara McCormick Fonville, and his three daughters, Beverly Van Zandt, Irma Garrett and Clarita Buie, executed an agreement not to probate the will but to take under the laws of descent and distribution. It was agreed that all property possessed by Mr. Fonville at his death belonged to the community estate of Mr. Fonville and his surviving spouse. Mrs. Fonville received one-half of the estate and each daughter received one-sixth. A partition was also effected. The husband of each daughter executed the agreement as a party.

The part of the agreement that is of primary importance here is that which deals with distribution of the estate of appellant's mother. After dealing with the second community, the agreement made the following provisions:

"It is understood and agreed that during the lifetime of R. H. Fonville there was a settlement of the Estate of Lillian Henrietta Racke Fonville, mother of Beverly Fonville Van Zandt and Irma

Fonville Garrett, and that transfers of property, in absolute fee simple, and other things of value included:

"To Beverly Fonville Van Zandt he conveyed or caused to be conveyed the following:

"(a) Five (5) acres of land at the northwest corner of Sage and Brownway (Westheimer) Roads, upon which W. K. Van Zandt's residence (known as 2530 Sage Road) is located."

Then other properties and moneys that were transferred to Beverly or Irma are listed. Following such listing is the following provision:

"It is distinctly understood and agreed that the conveyance of property above mentioned from R. H. Fonville to his daughters Beverly Fonville Van Zandt and Irma Fonville Garrett are hereby recognized and approved and are not to be questioned by any of the parties hereto, their heirs or assigns. In like manner the proceeds of the life insurance policies above referred to in favor of Beverly Fonville Van Zandt, Irma Fonville Garrett and Mrs. Clara McCormick Fonville are recognized to be fully owned by the above named parties, free from any claim of any party hereto."

On the same day the above agreement was signed, the parties to it, except for appellee, executed a quitclaim deed to Beverly Fonville Van Zandt. The instrument expressed as consideration the sum of $10.00 paid by "Beverly Fonville Van Zandt, wife of W. K. Van Zandt". The grantors did "bargain, sell, release and forever quitclaim unto the said Beverly Fonville Van Zandt, her heirs and assigns" all their right, title and interest. The habendum clause named "Beverly Fonville Van Zandt".

It is, we think, of significance that neither in the agreement above noted nor in the quitclaim deed was there a recital that the property was conveyed to appellant as a part of her separate property.

Special Issue No. 3, as worded, cast the burden on appellant to show by a preponderance of the evidence that the $2,500.00 paid for the Sage Road property was delivered to her by her father in partial settlement of her interest in her deceased mother's estate. The effect of the jury's answer was to find that she had not discharged that burden to the satisfaction of the jury.

Appellant's position is that all evidence shows that the $2,500.00 was given appellant as partial settlement of her mother's estate. The approach is twofold. First, it is contended that the agreement of November 17, 1955, which contains the provisions we have quoted, is contractual in nature and establishes the fact that the $2,500.00 came to appellant in partial settlement of the estate and therefore parol evidence cannot be employed to prove otherwise. Secondly, it is contended that even if parol evidence may be considered, all the evidence shows as a matter of law that the money employed to purchase the Sage Road property was transmitted to appellant by her father in partial settlement of her mother's estate.

The deed from Wm. H. Wilson and his wife in 1937 to appellee presumptively vested title in the community estate of appellant and appellee, it being executed and delivered during the marriage relationship and there being no recital that the conveyance was to the separate estate of the grantee. Van et al. v. Webb, 147 Tex. 299, 215 S.W.2d 151. All cases hold that under such circumstances parol evidence is admissible to show the true consideration for the deed. Were this the only instrument involved, clearly it would be permissible to consider parol evidence that in fact the consideration was the payment of money that came to appellant as an inheritance from her mother. However, appellant urges that the agreement of 1955 was contractual in nature and it in effect recited

that the property on Sage Road was conveyed to appellant in partial settlement of her mother's estate and the parties to the agreement contracted not to question the conveyance of the Sage Road property to appellant from her father and therefore parol evidence cannot be considered.

We hold that under the facts of this case parol evidence was admissible on the issue as to whether the $2,500.00 with which the land was purchased was delivered to appellant in partial settlement of her interest in her mother's estate.

■ The character of the title is determined as of the date it vested. It vested upon execution of the deed from Wilson and his wife to appellee in 1937. Lindsay v. Clayman, 151 Tex. 593, 254 S.W.2d 777; Blanchard v. Blanchard, 293 S.W.2d 825 (CCA), ref., n. r. e.; Speers Marital Rights in Texas, 4th Edition, Sec. 388. As above stated the title was presumptively in the community, but this could be rebutted.

■■ This was not changed by the 1955 agreement. That agreement, though appellee was a party to it, did not result in the acquisition of the title. Too, it is noted that the agreement merely made a recitation of past fact, that is, that Mr. Fonville had conveyed or caused to be conveyed to appellant the property on Sage Road in partial settlement of her mother's estate. There is no recital at all concerning the source of the $2,500.00. The parol evidence rule does not preclude evidence which refutes the recitation of a past fact. McCormick and Ray, Texas Law of Evidence, Second Edition, Sec. 1612, pp. 454–455. The recitation is but evidentiary. A statement in a deed that the consideration was separate or community is but an evidential fact. McCormick and Ray, Texas Law of Evidence, Second Edition, Sec. 1641, p. 495. McCormick and Ray further state in the same section that consequences which the law attaches to a set of facts cannot be prevented by a writing which states facts of a transaction erroneously.

■ Applying these rules to the facts of this case parol evidence was admissible, because the recital we noticed is of a past fact coming after the deed into appellee. The agreement, as shown by the documentary evidence recites facts incorrectly. Mr. Fonville did not convey the property to appellant, nor did he cause it to be conveyed to her. She caused it to be conveyed by Mr. and Mrs. Wilson to appellee. The property was never a part of the first community.

Further, with regard to the contention that the agreement was contractual as to the property, it is noted that there is nowhere a conveyance to appellant of the property as a part of her separate estate.

■ There are many cases dealing with conveyances between husband and wife. All of the leading cases are analyzed and discussed by our Supreme Court in Jackson v. Hernandez, 155 Tex. 249, 285 S.W.2d 184. As we understand these cases from reading all of them and from the Supreme Court's interpretation of them in the last cited case, the parol evidence rule is operative to preclude parol evidence not merely because of a contractual consideration in the deed but because the deed from the husband or wife to the other contains the legally operative clauses conveying property to the grantee's separate estate. The same rule is applicable where a spouse though not named as a grantor was instrumental in procuring the deed to be so drawn. The reasoning is that the spouse conveying or causing to be conveyed by deed containing the legally operative granting and habendum clauses conclusively evidences an intent to make a gift to the grantee.

In none of the instruments here involved were there these legally operative clauses.

■ Considering all the evidence, we hold there was an issue of fact as to whether the $2,500.00 was in partial settlement of appellant's mother's estate. Also considering all of the evidence, the material part of which we have recited herein, we cannot

say that the jury's answer to Special Issue No. 3 was so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong or manifestly unjust.

As previously stated, the court divided the Investment Advisory Account equally with no statement as to whether he considered it community property or the property of both owned in equal proportions. As above stated, we are of the view that under the evidence it could not be community property. Whatever the court's theory the trial court has a broad discretion in partitioning the property. No contention is made that the division made was inequitable.

Affirmed.