Adelle COWART, Appellant,

v.

Medford COWART, Appellee.

No. 7613.

Court of Civil Appeals of Texas, Beaumont.

Oct. 31, 1974.

Rehearing Denied Nov. 21, 1974.

**360**

William D. Winston, Lufkin, for appellant.

Sumner Williams, Jr., Lufkin, Robert Q. Keith, c/o Mehaffy, Weber, Keith & Gonsoulin, Beaumont, for appellee.

STEPHENSON, Justice.

Adelle Cowart intervened in a suit involving stock in Peco Oil Company in which her former husband, Medford Cowart, was plaintiff. The original suit was settled, and no questions pertaining to it are raised on this appeal. The case proceeded to trial between Adelle Cowart and Medford Cowart resulting in a judgment for Medford Cowart on the jury verdict. The parties will be referred to here by name.

There is no way to avoid a somewhat lengthy statement of the facts in order to bring the questions of law raised on this appeal into focus. Adelle and Medford were married in 1942, separated in 1963, and divorced November 19, 1965. In 1961 the Peco Oil Company was formed with Medford getting 49 percent of the stock. In January 1964, Medford transferred all of the stock in Peco Oil Company (except one share) to the owner of the 51 percent of the stock for which he was given two notes, $6,000 and $1,375. In the settlement agreement made by Adelle and Medford there was no mention of either the Peco Oil Company stock or the notes received for its transfer. December 2, 1965, such stock was returned to Medford and the notes cancelled.

Adelle's points of error in this court are based upon the premise that such stock was part of their community estate and that Medford was guilty of fraud in his transfer and concealment of the stock.

The jury made these findings: That the stock transaction in January, 1964, was not a sham transaction. That at the time of entering into the property settlement with Adelle, Medford did not conceal from her the two notes given for the Peco Oil Company stock. That the Peco stock was originally purchased in 1961 with Medford's separate funds. The jury failed to find that an agreement was made to transfer the stock back to Medford in cancellation

of the notes after the divorce with the intent to defraud Adelle.

■ Adelle's points of error are, in effect, that there is no evidence and insufficient evidence to support such findings, and that such findings are contrary to the great weight and preponderance of the evidence. In passing upon the "no evidence" point, we consider only the favorable evidence, and in passing upon the remaining points, we consider the entire record.

Medford's father testified: He had been married to Mary Cowart, and they had four children that lived, two boys and two girls. His wife died April 30, 1947, and left no will. At that time, they owned two tracts of land (93 and 150 acres) in Angelina County which they had purchased during their marriage. In 1950 he wanted to give his four children their inheritance, and the girls wanted money and the boys, land. He arranged to borrow some money from the Federal Land Bank to pay the girls $1,500 each. He, joined by Medford's brother and two sisters, gave one deed to Medford covering both tracts of land, and it was recited that $3,000 was paid in cash and a note for $3,000. No cash payment was made.

■ The evidence shows: Medford's father transferred and assigned the note to the Federal Land Bank, and Medford and Adelle executed a Deed of Trust in favor of the Federal Land Bank to secure a $2,730 note. Medford then conveyed the 150 acre tract to his brother who assumed $2,000 of the note due the Federal Land Bank, leaving Medford owing a balance of $730 upon such note. Then in 1960, that note had been reduced to $500 when Medford sold the 93 acre tract to his brother through the Veterans Land Board for $7,500. That left Medford with a balance of $7,000 after paying the $500 balance on the Federal Land Bank note.

Medford testified: He bought 100 shares of American National Insurance Company stock for $1,000, leaving him $6,000 in cash, which he kept separated in the M. L. Cowart Farm account. Then in 1961, he bought the Peco Oil Company stock with the $6,000. In January 1964 (after separation but before the divorce), the owner of the 51 percent of the stock told Medford he did not want Peco involved in a divorce case. Such majority stockholder told Medford it was best to sell the stock for two notes and, after the divorce, Medford could buy the stock back. Medford sold his stock and received two notes for $6,000 and $1,375, which were secured by new stock certificates issued. After the divorce, Medford repurchased the stock by cancelling the two notes given him. Medford also testified unequivocally that he told Adelle and her attorney that he had sold his Peco stock and received the two notes, but that he would not include them in the property settlement because he bought that stock with money he received for the land he inherited from his mother.

The favorable testimony set out above supports the jury finding that the Peco stock was originally purchased in 1961 with Medford's separate funds. Even though the deed given to Medford in 1950 covering the two tracts of land was during the time he was married to Adelle and there was no mention of it being his separate property, still two of the grantors and Medford testified the recited cash consideration was not paid and the transaction represented a division of Medford's inheritance from his mother and father's estate. The explanation is logical considering the fact that $3,000 was needed from a loan against the property in order to give the two daughters $1,500 each as their part of the estate, and then the conveyance by Medford to his brother as his part of the estate. All of such testimony was admissible under well established law in this state allowing testimony to show that cash consideration was not actually paid. See Van v. Webb, 147 Tex. 299, 215 S.W.2d 151 (1948) and Van Zandt v. Van Zandt, 451 S.W.2d 322 (Tex.Civ.App.—Houston [1st Dist.] 1970, writ dism'd).

■ The evidence is not clear as to the source of the money used to reduce Medford's note to the Federal Land Bank from $730 to $500, but that is immaterial to any issue before us because the "character of property, whether separate or community, is fixed at the very time of acquisition [of title]." Colden v. Alexander, 141 Tex. 134, 171 S.W.2d 328, 334 (1943); Lindsay v. Clayman, 151 Tex. 593, 254 S.W.2d 777, 780 (1952), from which there may arise an equitable right of reimbursement. Dakan v. Dakan, 125 Tex. 305, 83 S.W.2d 620 (1935); Jackson v. Hernandez, 155 Tex. 249, 285 S.W.2d 184, 189 (1955). The right to reimbursement has never been injected into this case at any point.

The evidence given by Medford shows that he sold the 93 acre tract to his brother through the Veterans Land Bank from which sale he obtained the $6,000 he invested in the Peco stock. His testimony is uncontroverted that he kept such money separated from any funds he and Adelle had, before buying the Peco stock. Therefore, the evidence shows a clear and distinct tracing of the 93 acre tract of land into Medford as his separate property, the sale of that property and the tracing of the proceeds into the Peco stock. The "no evidence" points are overruled.

Then, considering the record as a whole, even though Adelle and her attorney denied Medford told them he had the notes given to him for the Peco stock at the time of the property settlement and divorce, and contradicted other testimony, the jury believed the testimony given by Medford. The remaining points are overruled.

■■ Obviously, if the Peco stock was Medford's separate property, then whether the stock transaction in January 1964 was as shown was immaterial to the outcome of this case. However, in view of the testimony given by Medford and the attorney handling such stock transaction, the jury

finding it was not a sham is supported by such evidence, and it is not clearly wrong or manifestly unjust.

Affirmed.