Affirmed and Memorandum Opinion filed April 8, 2004









Affirmed
and Memorandum Opinion filed April 8, 2004.

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-01142-CV

____________

 

SULEIMAN IBRAHIM
AWAD,
Appellant

 

V.

 

DIANA
RASMUSSEN-AWAD,
Appellee

 



 

On Appeal from the 310th
District Court

Harris County, Texas

Trial Court Cause No. 01-51663

 



 

M E M O R A N D U M   O P I N I O N

Appellant Suleiman Ibrahim Awad appeals
from a divorce proceeding between Suleiman and his ex-wife, appellee Diana
Rasmussen-Awad.  In three issues,
Suleiman contends the trial court abused its discretion (1) in failing to file
findings of fact and conclusions of law, (2) in characterizing certain real
property as community property, and (3) in its division of the community
estate.  We affirm.

 

 








Background

After almost 10 years of marriage, Diana
filed for divorce in October of 2001. 
The separate property right at issue in this case is Diana=s interest in real
property she acquired prior to her marriage to Suleiman.  The property located at 6815 Feather Creek,
Houston, Texas (AFeather Creek property@) was valued by
Diana at $68,000.00.  It is undisputed
that the Feather Creek property was Diana=s residence prior
to her marriage to Suleiman.  She and
Suleiman, along with her children from her first marriage, lived in the house
for a couple of years after they married. 
Diana and Suleiman subsequently moved into an apartment.

After they were married, Suleiman started
ABBE, Inc., a valet company and taxi service. 
Diana worked for Suleiman=s business running
errands.  She did not get paid by
Suleiman for the work she did for his business. 
Prior to marrying Suleiman, Diana had received approximately $500,000 as
a result of a million dollar settlement of a lawsuit.  She gave approximately $20,000 to Suleiman to
help him start his business, and some of the settlement funds also were used
for their shared living expenses. 
Otherwise, none of the funds were left by the time of the divorce
proceeding.








Diana testified that she and Suleiman
discussed buying a house together.  They
agreed that they would sell the Feather Creek property in order to have a
larger down payment to apply to the purchase of a new home.  Diana testified that she had to force her
children to sign the cash warranty deeds transferring the Feather Creek
property to Suleiman because they did not want to transfer the property to
him.  Diana further testified that
Suleiman pushed her to have her children sign the deeds transferring the
property to him.  She testified that she
eventually signed the deed at Suleiman=s insistence so
they could afford to buy a new house. 
Diana further testified that Suleiman said the house would be in his
name only because she did not have good credit. 
All of Diana=s children ultimately signed the deeds,
except for Caroline, whose signature Diana forged.  Two of her children, Cynthia and Alex,
testified at trial (either as live witnesses or by deposition).  Cynthia said that she signed the deed so that
her mother could sell the Feather Creek property, her mother and Suleiman could
buy another house together, and her grandmother could receive some financial
assistance to help with bills.  Cynthia
testified that she thought she was transferring her interest in the Feather
Creek property to her mother and the house would be hers and Suleiman=s.  She further testified that she did not want
Suleiman to have the home, and that when she asked her mother why only Suleiman=s name was on the
deed, her mother said it was because Suleiman handled Aall of the
transactions on behalf of them.@  Suleiman and Diana never bought a house
together.  Suleiman recorded the deeds on
October 1, 2001.  Diana testified that
Suleiman did not give her any consideration for the deeds and that she did not
owe him any money. 

Suleiman testified that he posted bail for
Diana=s children to get
out of jail, paid for funeral expenses for Diana=s deceased aunt,
paid the down payment and a note on a car driven by her daughters, paid for
repairs on the vehicle after her son had an accident in it, and paid for taxes
on the home of Diana=s aunt in Ohio.  There was conflicting testimony about whether
Suleiman was repaid for these expenditures. 
Suleiman also disputed that Diana had given him $20,000 of her
settlement proceeds.  Diana testified
that, after the court entered an injunction as part of its temporary orders
enjoining the parties from incurring additional debt, she incurred additional
debt on credit cards in Suleiman=s name in the
approximate amount of $2,000 for clothes. 
The record also reflects that Suleiman paid some of the mortgage
payments on the Feather Creek property. 
After the parties separated, Diana leased the Feather Creek property.








Diana testified that Suleiman=s abuse instigated
her filing for divorce.  She testified in
detail about an assault on her on Labor Day of 2001.  The police were called to that disturbance,
and Suleiman was arrested and, according to Diana, charged with family
disturbance and assault.   Although
Suleiman disputed the medical care sought by Diana after this incident, Diana
testified that she sought treatment, first at Ben Taub hospital and later on an
outpatient basis at a clinic.  She was
prescribed various medications, including antidepressant, anti-anxiety, and
high blood pressure medications, and began a course of therapy still ongoing at
the time of trial.  Diana also testified
that this was not the first instance of abuse by Suleiman.

At trial in July of 2002, questions were
submitted to the jury regarding whether each spouse had committed assault on
the other spouse and was entitled to damages and whether Suleiman had committed
fraud with respect to the separate property rights of Diana.  Although the jury found that both spouses
committed assault, they found that neither Diana nor Suleiman suffered any
damages as a result of the assaults.

In the final divorce decree entered by the
trial court, the court found that the Feather Creek property was community
property.  The trial court awarded Diana
the Feather Creek property as her separate property.  The trial court also awarded Diana the
following three automobiles:  (1) 1997
Lincoln Town Car, (2) 2000 Mercedes-Benz S500, and (3) 1997 Volkswagen
Jetta.  The court awarded Diana all cash
in accounts in her name, as well as any interest in any notes, receivables,
loans, or advances to or indebtedness from Sam Jamus and Steve Martin.[1]  The trial court awarded Suleiman the
following as his separate property: 
(1) money in accounts belonging to Suleiman or ABBE, Inc., (2)
stock or securities in his name or Diana=s name in ABBE,
Inc., (3) all ownership interest in his name or Diana=s name in ABBE,
Inc. or ABBE Valet, including all property used in connection with the
business; (4) six automobiles, including four Mercedes-Benz vehicles, a
Lincoln, and a Pontiac; and (5) a life insurance policy.








The trial court ordered Diana to pay the
balance of the note on the Feather Creek property, as well as the balance of
the notes on the vehicles awarded to her. 
The trial court further ordered Diana to pay the balances on four credit
cards in her or Suleiman=s name. 
The trial court ordered Suleiman to pay the balance on 39 credit card
accounts, revolving accounts, or other notes reflecting debts owed to various
individuals or businesses.  The trial
court also ordered Suleiman to pay the balances owed on the automobiles awarded
to him as his separate property.

Before the court entered the final divorce
decree, but after it rendered its judgment at the conclusion of trial, Suleiman
asked the court to reform its judgment to reflect that the Feather Creek
property was his separate property and later moved for reconsideration of the
court=s oral
judgment.  After the trial court=s entry of the
divorce decree, Suleiman timely moved for a new trial on September 5.  The motion was heard and overruled by order
of the trial court on October 21. 
Suleiman then perfected this appeal.

Trial Court=s Failure to File
Findings of Fact and Conclusions of Law

In his first issue, Suleiman asks this
court to abate this appeal until the trial court files findings of fact and
conclusions of law.  After the trial
court entered the final decree of divorce in this proceeding, Suleiman timely
filed a request for findings of fact and conclusions of law and timely filed a
notice of past due findings of fact and conclusions of law.  We need not abate this appeal because we find
that Suleiman was not harmed by the trial court=s failure to file
findings of fact and conclusions of law.








Section 6.711 of the Family Code provides
that, in a suit for dissolution of a marriage in which the court has rendered a
judgment dividing the estate of the parties, on request by a party, the court
shall state in writing its findings of fact and conclusions of law
concerning  certain aspects of the
parties= liabilities and
assets on which disputed evidence has been presented.  See Tex.
Fam. Code Ann. ' 6.711 (Vernon Supp. 2003).  When properly requested, a trial court has a
mandatory duty to file findings of fact. 
See, e.g., Cherne Indus., Inc. v. Magallanes, 763 S.W.2d
768, 772 (Tex. 1989).  If a trial court
does not file findings, it is presumed harmful unless the record affirmatively
shows that the appellant suffered no harm. 
See, e.g., Tenery v. Tenery, 932 S.W.2d 29, 30 (Tex.
1996); Cherne Indus., 763 S.W.2d at 772. 
Generally, in complicated cases with disputed facts with two or more
grounds for recovery or defense, the inference of harm cannot be defeated.  Randall v. Jennings, 788 S.W.2d 931,
932 (Tex. App.CHouston [14th Dist.] 1990, no writ).  If, however, the lack of findings is
harmless, we can affirm.  See Tex. R. App. P. 44.1(a).  Error is harmful if it prevents a party from
properly presenting a case to the appellate court.  See Tex.
R. App. P. 44.1(a)(2); Tenery, 932 S.W.2d at 30.  The controlling issue is whether the
circumstances of the particular case would require an appellant to guess at the
reasons for the trial court=s decision.  Goggins v. Leo, 849 S.W.2d 373, 379
(Tex. App.CHouston [14th Dist.] 1993, no writ).

We conclude that the lack of findings was
harmless in this case.  Suleiman was able
to present the issues on appeal, and this court is able to address and decide
Suleiman=s issues without
the benefit of findings of fact and conclusions of law.  Accordingly, we overrule Suleiman=s first issue.

         Characterization of Feather Creek
Property as Community Property

In his second issue, Suleiman argues that
the trial court abused its discretion by incorrectly characterizing the Feather
Creek property as community property, instead of Suleiman=s separate
property.  Suleiman further contends this
improper characterization of the Feather Creek property resulted in an unjust
division of the community estate. 
Suleiman=s issue is in essence an argument that
there is no evidence to support the trial court=s conclusion that
the Feather Creek property was community property.

In reviewing a Ano-evidence@ point, we must
reject all evidence contrary to the fact-finder=s findings and
consider only the facts and circumstances which tend to support those
findings.  See Ellebracht v.
Ellebracht, 735 S.W.2d 658, 662 (Tex. App.CAustin 1987, no
writ).  In reviewing factual-sufficiency
issues, we consider all of the evidence to determine whether the findings are
so against the great weight and preponderance of the evidence as to be
manifestly unjust.  Id.








AAll property, both
real and personal, of a spouse owned or claimed before marriage, and that
acquired afterward by gift, devise or descent, shall be the separate property
of that spouse . . . .@  Tex. Const. art. XVI, ' 15.  The Texas Family Code defines separate
property as that property owned by a spouse before marriage, acquired during
the marriage by gift, devise, or descent, or as a recovery for personal
injuries sustained during the marriage.  See
Tex. Fam. Code Ann. ' 3.001 (Vernon
1998).  Community property consists of
property, other than separate property, acquired by either spouse during the
marriage.  See Tex. Fam. Code Ann. ' 3.002 (Vernon
1998).  The nature of property as
separate or community is determined by the inception of title to the propertyCthe time and
circumstances of its acquisition.  See,
e.g., Evans v. Evans, 14 S.W.3d 343, 346 (Tex. App.CHouston [14th
Dist.] 2000, no pet.) (citations omitted); Rusk v. Rusk, 5 S.W.3d 299,
303 (Tex. App.CHouston [14th Dist.] 1999, pet.
denied).  AThe major
consideration in determining the characterization of property as community or
separate is the intention of spouses shown by the circumstances surrounding the
inception of title.@  Rusk,
5 S.W.3d at 303 (citations omitted).  In
Texas, all property possessed by either spouse during or on dissolution of the
marriage is presumed to be community property. 
See Tex. Fam. Code Ann.
' 3.003 (Vernon
1998).  To overcome the presumption, a
party must present clear and convincing evidence that the property is
separate.  See Evans, 14 S.W.3d at
346.  A party contending that property is
his separate property must generally trace and clearly identify the property as
separate.  Id.








Suleiman has not adequately presented his
issue on appeal.  Suleiman devoted merely
a page and a half of his brief to argue that the cash warranty deeds signed by
Diana and her children transferred title in the Feather Creek property to
Suleiman as his separate property.  He
cited no authority to support his contention, other than certain provisions of
the Family Code and the Texas Constitution setting forth the general rules
regarding what constitutes separate property in Texas.  The only evidence Suleiman cited to support
his claim are the deeds themselves, and he did not discuss the contrary oral
testimony given at trial.  Thus, Suleiman
has not adequately briefed his argument on appeal, and, therefore, has waived
his argument that the trial court improperly characterized the Feather Creek
property as community property.  See
Tex. R. App. P. 38.1(e), (h); see
also, e.g., Nolan v. State, 102 S.W.3d 231, 238 (Tex. App.CHouston [14th
Dist.] 2003, pet ref=d) (stating that appellant=s failure to
present issue for review waived error); Levin v. Harrington, No.
14-99-01094-CV, 2001 WL 422072, at *6 n.7 (Tex. App.CHouston [14th
Dist.] April 26, 2001, no pet.) (stating that even if appellant had presented
issue for review, he waived review by failure to provide argument, cite legal
authorities, and make relevant record references) (citations omitted).  Accordingly, we overrule Suleiman=s second issue.

Furthermore, even if we did not find
briefing waiver, we would still hold that Suleiman has not met his burden of
showing that the Feather Creek property is his separate property.  Although it is correct that under Texas law
one spouse may convey community property or his or her separate property to the
other spouse, the consideration for the conveyance must be the grantee=s separate
property, or the conveyance must be a gift. 
See, e.g., In re the Marriage of James Michael Morrison and
Rosemary Annette Morrison, 913 S.W.2d 689, 691 (Tex. App.CTexarkana 1995,
writ denied) (AFor over a century, Texas cases have
uniformly held that when a husband conveys a parcel of community property to
his wife, the entire parcel becomes the wife=s separate
property, so long as the consideration for the conveyance is the wife=s separate
property, or the conveyance is a gift from the husband to the wife.@).  In such a case, if the deed recites no
consideration or only nominal consideration, it is construed as evidencing an
intention on the part of the grantor spouse to donate the property to the
grantee spouse as a gift.  Id.  Although the execution of a deed by one
spouse to the other, of either separate or community property, creates a prima
facie presumption that it was the intent of the grantor spouse to transfer the
property to the other spouse as his or her separate property, the presumption
is subject to rebuttal.  Id.








In this case, the deed does reflect that
consideration was given, and aside from arguing that he should be repaid
certain amounts loaned to Diana and her children, Suleiman presented no
evidence of whether that consideration was his separate property.  Furthermore, the deed does not contain
language indicating that Diana transferred the Feather Creek property to him as
a gift to his separate property estate.  Cf.
Pankhurst v. Weitinger & Tucker, 850 S.W.2d 726, 730B31 (Tex. App.CCorpus Christi
1993, writ denied) (finding husband=s assignment of
interest in federal lawsuit was gift of a portion of his community property
interest to his wife where there was no evidence of any onerous consideration
and there was an expression of the husband=s donative intent
with the use of language A>token gift of my
life and esteem=@).  In addition, Diana=s testimony
refutes Suleiman=s contention that the three cash warranty
deeds in this case reflect her intent to convey the Feather Creek property to
Suleiman as his separate property.

Also, the interspousal transfer rules do
not apply to gifts by third parties.  A
gift is defined as a transfer of property made voluntarily and gratuitously,
without consideration.  See Rusk,
5 S.W.3d at 303 (citing Ellebracht, 735 S.W.2d at 659).  The burden of proving a gift is on the party
claiming the gift was made.  Id.  One controlling factor is the donative intent
of the grantor at the time of the conveyance. 
Id.  Suleiman does not
discuss the testimony given by Diana=s children
disputing that they intended to transfer their interest in the Feather Creek
property to him as a gift of separate property. 
As we noted above, the deedsCidentical in all
significant respectsCdo not contain any recitals stating that
the conveyance was to the separate property of Suleiman.  See Robles v. Robles, 965 S.W.2d 605,
614, 616, 619 (Tex. App.CHouston [1st Dist.] 1998, pet. denied) (AA deed executed
and delivered during the marriage with no recital that the conveyance was to
the separate estate of the grantee is presumptively community property.@) (quoting Van
Zandt v. Van Zandt, 451 S.W.2d 322, 326 (Tex. App.CHouston [1st
Dist.] 1970, writ dism=d)); cf. Kyles v. Kyles, 832 S.W.2d
194, 196 (Tex. App.CBeaumont 1992, no writ) (stating that use
of language Aas her sole and separate property and
estate@ in general
warranty deeds created presumption that property conveyed was grantee=s separate
property).  There is no recital in the
deeds that separate funds were used in the conveyances by Diana=s children to
Suleiman.

Accordingly, even if he had not waived his
second issue on appeal, we conclude that Suleiman has not met his burden of
proving by clear and convincing evidence that the Feather Creek property
conveyed to him during the marriage is his separate property.  Suleiman=s testimony alone
is not sufficient to rebut the presumption of community property.  The trial court=s finding is not
so against the great weight and preponderance of the evidence as to be
manifestly unjust.  Thus, we overrule
Suleiman=s second issue for
this additional reason.








                                    Division of
the Community Estate

In his third issue, Suleiman contends the
trial court improperly divided the community estate, awarding Suleiman too
little assets and too many community debts and awarding Diana too many assets
and too little debt.  Suleiman asserts
that he was awarded $23,444 in assets and debts of $154,405, a negative estate
of $147,488, and that Diana was awarded a net estate of $36,474.

In a divorce proceeding, the trial court
shall order a division of the estate of the parties in a manner it deems just
and right.  Robles, 965 S.W.2d at
613.  The trial court exercises wide
discretion in the division of marital property, and we will not disturb the
trial court=s decision unless it is shown the court
has clearly abused its discretion.  Id.
at 613B14 (citing, inter
alia, Jacobs v. Jacobs, 687 S.W.2d 731, 733 (Tex. 1985)).  AThe role of an
appellate court is only to determine whether the trial court abused its
discretion in its disposition of the community property and an appellate court
does not have the authority to render judgment dividing the marital property.@  Id. at 621 (citations omitted).  This court presumes the trial court exercised
its discretion properly.  See id.  

The trial court may order an unequal
division of the community property Awhere a reasonable
basis exists for doing so.@  Id. 
It is not required that the property be divided equally; the trial court
must divide the estate in an equitable manner. 
Zieba v. Martin, 928 S.W.2d 782, 790B91 (Tex. App.CHouston [14th
Dist.] 1996, no writ).  In making the
division, the trial court may consider a myriad of factors, including, but not
limited to, the following:

(1) fault in the breakup of the
marriage; (2) disparity of incomes or of earning capacities; (3) benefits the
innocent spouse would have received from the continuation of the marriage; (4)
business opportunities, education, and training; (5) relative physical
conditions and disparity of ages; (6) relative financial conditions and
obligations; (7) size of respective estates and the nature of the property; (8)
custody of children; (9) excessive community property gifts to others or waste
of community assets; (10) tax consequences.








Id. at 790B91 (citing Baccus
v. Baccus, 808 S.W.2d 694, 700 (Tex. App.CBeaumont 1991, no
writ)).

Based on our review of the record, we conclude
the trial court did not abuse its discretion by dividing the community estate
unequally.  Suleiman operated a valet and
taxi business that required the use of automobiles.  Consequently, he was awarded the majority of
the vehicles and ordered to pay the notes on those vehicles.  The parties had a significant amount of
debt.  Suleiman conceded that the
community estate consisted mostly of debts. 
One asset of the community estate was the Feather Creek property, which,
for the reasons we discussed above, was properly awarded to Diana.  Except for providing services to Suleiman=s business, Diana
did not have a steady work history during the marriage or while the parties
were separated.  Her testimony reflected
that she had health problems both before and after the parties separatedCsome, such as
anxiety and emotional problems, due all or in part to Suleiman=s abuse.  Suleiman=s expert, Jeffrey
Schumacher, a partner in the firm of McClure, Schumacher & Associates, a
CPA firm specializing in doing business valuations and the sale of businesses,
valued ABBE, Inc.  Excluding the personal
goodwill attributable to Suleiman, he valued ABBE, Inc. as having a market
value of $54,000, including tangible assets of $3,100.  He valued the community property interest in
ABBE, Inc. as approximately $18,000. 
Suleiman was awarded all of the ownership interest in ABBE, Inc., a
going business concern.  Thus, although
the community estate consisted mostly of debt, the trial court could have
considered its award of ABBE, Inc. to Suleiman when it also awarded Suleiman
most of the debts associated with the business. 
The trial court also could have considered Suleiman=s abuse in making
its division of the community estate.  See
generally, e.g., Faram v. Gervitz-Faram, 895 S.W.2d 839, 844 (Tex.
App.CFort Worth 1995,
no writ) (holding that trial court did not abuse its discretion in awarding
husband 21.7% of net estate and wife 72.9% of net estate considering husband=s violent and
abusive nature, husband=s steady income and retirement benefits,
wife=s absence of work
history, and husband=s waste of community property).








In sum, the record indicates a reasonable
basis for the decisions of the trial court. 
Therefore, we overrule Suleiman=s third issue.

Having overruled all of Suleiman=s issues, the
judgment of the trial court is affirmed.

 

 

 

 

/s/      Leslie Brock Yates

Justice

 

 

Judgment
rendered and Memorandum Opinion filed April 8, 2004.

Panel
consists of Justices Yates, Hudson, and Fowler.











[1]  The trial
court awarded other assets of the community to Diana, but for purposes of this
opinion, we only discuss the significant assets.