Gus C. ROBLES, Appellant,

v.

Irene ROBLES, Appellee.

No. 01–94–00367–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 26, 1998.

Earle S. Lilly, Warren Cole, Houston, Leslie Werner de Soliz, Corpus Christi, for Appellant.

Greg S. Lindley, Edward E. Lindsay, Houston, for Appellee.

Before WILSON, O'CONNOR and HUTSON–DUNN,* JJ.

---

* The Honorable D. Camille Hutson–Dunn, retired Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

## OPINION ON MOTION FOR REHEARING

WILSON, Justice.

The appellant, Gus C. Robles, appeals from the trial court's entry of a final decree of divorce and division of property between him and the appellee, Irene Robles.[1] We grant appellant's motion for rehearing, withdraw our original opinion of August 8, 1996, and substitute the following opinion in its place.

In seven points of error, Gus contends the trial court erred by (1) not timely signing findings of fact and conclusions of law when requested to do so; (2) denying his request for a trial de novo on appeal of the associate judge's ruling; (3) classifying certain real property as community property and awarding it to Irene; and (4) classifying a bank account as community property and awarding half of the account funds to Irene. We affirm.

### Summary of Facts

Gus and Irene were married in 1949, and lived together until 1970, when they separated. Gus filed for divorce in 1992 in district court. The Honorable C. Dean Huckabee, presiding judge of the 247th District Court, referred the parties' divorce proceeding to an associate judge,[2] the Honorable William Morris.[3] The trial court's docket sheet indicates the associate judge presided at a bench trial and heard testimony of the parties and witnesses.

The trial began September 27, 1993. Evidence was presented to the associate judge on September 27 and October 7 and 15. The evidence was concluded on October 15 and the associate judge then took the case "under advisement." The associate judge stated on the record that he would take at least three weeks before reaching a decision.

■ An entry on the court's docket sheet signed by the associate judge indicates he "granted" the parties a divorce on November 30, 1993.[4] The docket sheet entry for that day reads: "Divorce granted per record. Court's Motion to Enter set 12/15/93 9:00 a.m." A statement of facts from the hearing before the associate judge on November 30 indicates that he pronounced all of his recommendations regarding the division of the marital property on the record in open court. This statement of facts also shows that Gus and his counsel did not appear at this hearing to receive the associate judge's findings and recommendations.

On December 15, 1994, new counsel substituted in for Gus and a continuance was granted moving the hearing on the trial court's entry of judgment to January 4, 1994. On January 4, 1994, a final decree signed by the trial court, granting the parties a divorce and dividing certain real and personal property between the parties, was rendered and filed at 2:20 p.m. On that same day, Gus filed his notice of appeal of the associate judge's recommendations and requested a trial de novo before the trial court. After a hearing, the trial court denied Gus's request for a trial de novo as untimely filed.

### Findings of Fact and Conclusions of Law

In his first point of error, Gus contends the trial court erred by not timely filing findings of fact and conclusions of law. Specifically, he argues the trial court's failure to timely file the findings of fact deprived him of his

1. Appellant does not appeal that portion of the trial court's judgment granting the parties a divorce.

2. We use the terms "associate judge" and "master" interchangeably.

3. A copy of the referral order does not appear in the record.

4. We note that under both the relevant former provision of the Government Code applicable at the time of the parties' divorce proceedings and the current provisions of the Family Code, an associate judge does not have the power to render judgment. Rendition occurs only when the referring court adopts the master's report, or if no report is generated, when the trial judge signs the final judgment. *See* Act of April 30, 1987, 70th Leg., R.S., ch. 148, § 2.74, 1987 Tex.Gen. Laws 534, 569, *repealed by* Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 2, 1995 Tex.Gen.Laws 113, 282 (current version at TEX.FAM.CODE ANN. § 201.007, 201.013(b) (Vernon 1996)). Thus, the parties' divorce was not rendered until January 4, 1994, when the referring court signed the final decree of divorce and adopted the associate judge's recommendations.

opportunity to object or request additional findings, and he has suffered economic harm due to the added expense of filing an amended brief. As a result, he asks us to reverse and remand for a new trial.

After the judgment was signed, Gus timely requested findings of fact and conclusions of law.[5] When the trial court did not file findings of fact and conclusions of law, Gus timely filed a notice of past due findings.[6] As a result, the trial court's findings of fact and conclusions of law were due to be filed on March 7, 1994.[7]

Gus's original appellate brief was filed with this Court on August 16, 1994. The findings of fact and conclusions of law were not signed until September 14, 1994. This Court granted Irene's motion for leave to file the original findings of fact and conclusions of law on October 13, 1994. They then became part of the record and now appear in a supplemental transcript. This Court granted Gus's motion for leave to file an amended brief and subsequently granted an extension of time for Gus to file an amended brief addressing the trial court's findings.

Gus filed an amended brief with this Court on January 17, 1995. He also filed an objection to Irene's motion for leave to file findings of fact and conclusions of law or alternatively, a motion to strike the supplemental transcript containing those findings. This Court ordered that the motion be taken with this appeal.

Gus's reliance on *Stefek v. Helvey*, 601 S.W.2d 168, 170 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.) for the proposition that we must reverse and remand is misplaced. As correctly stated by Gus, in *Stefek*, the court disregarded the findings of fact and conclusions of law. *Id.* at 171. The court held that while minor infractions of the rules concerning the timely filing of findings of fact will be permitted, it would not consider findings and conclusions that grossly violate the filing dates. *Id.* at 170. However, in *Stefek*, the court refused the findings of fact because the *appellant* did not timely comply with the provisions for requesting such findings and conclusions. *Id.* at 170 (emphasis added). The court's refusal was not based on the trial court's untimely filing. Therefore, we hold that *Stefek* is distinguishable and does not control our interpretation of the rules regarding time limits for a trial court's filing of findings of fact and conclusions of law.

■■■■ The procedural rules establishing the time limits for the requesting and filing of findings of fact and conclusions of law do not preclude the trial court from issuing belated findings. *Jefferson County Drainage Dist. v. Lower Neches Valley Auth.*, 876 S.W.2d 940, 959–60 (Tex.App.—Beaumont 1994, writ denied); *Morrison v. Morrison*, 713 S.W.2d 377, 380 (Tex.App.—Dallas 1986, writ dism'd). Unless they can show injury, litigants have no remedy if a trial court files untimely findings and conclusions. *Jefferson County*, 876 S.W.2d at 960; *Morrison*, 713 S.W.2d at 381. Injury may be in one of two forms: (1) the litigant was unable to request additional findings, or (2) the litigant was prevented from properly presenting his appeal. *Jefferson County*, 876 S.W.2d at 960; *Morrison*, 713 S.W.2d at 381. If injury is shown, the appellate court may abate the appeal so as to give the appellant the opportunity to request additional or amended findings in accordance with the rules. *McShan v. Pitts*, 538 S.W.2d 266, 266 (Tex.Civ.App.—San Antonio 1976, no writ); *see Jefferson*

---

**5.** Within 20 days after the judgment is signed any party may request the trial court to state in writing its findings of fact and conclusions of law. Tex.R.Civ.P. 296.

**6.** Rule 297 states, in part:
The court shall file its findings of fact and conclusions of law within twenty days after a timely request is filed.... If the court fails to file timely findings of fact and conclusions of law, the party making the request shall, within thirty days after filing the original request, file with the clerk ... a "Notice of Past Due Findings of Fact and Conclusions of Law" which shall be immediately called to the attention of the court by the clerk.... Upon filing this notice, the time for the court to file findings of fact and conclusions of law is extended to forty days from the date the original request was filed.
Tex.R.Civ.P. 297.

**7.** March 5, 1994, the fortieth day from the date the original request for findings of fact was filed, fell on a Saturday.

*County,* 876 S.W.2d at 960; *Morrison,* 713 S.W.2d at 381.

■■■ Although the trial court prepared and filed findings of fact and conclusions of law in an untimely manner, Gus has not shown harm. He was not denied the opportunity to properly present his appeal, because after the record was supplemented, Gus was granted leave to file an amended brief addressing the untimely filed findings and conclusions. Additionally, Gus was not prevented from objecting and requesting additional findings of fact and conclusions of law. Within 10 days after the trial court files its original findings and conclusions, any party may file a request for specified additional or amended findings or conclusions. TEX. R.CIV.P. 298. Also, a trial court may file additional findings even after it loses plenary power to affect the judgment. *Morrison,* 713 S.W.2d at 380–81. The failure to request additional findings of fact and conclusions of law constitutes a waiver on appeal of the trial court's lack of such findings and conclusions. *Keith v. Keith,* 763 S.W.2d 950, 953 (Tex. App.—Fort Worth 1989, no writ); *Goldston Corp. v. Hernandez,* 714 S.W.2d 350, 352 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.). The record indicates Gus did not file a request for additional findings or conclusions with the trial court. Neither party has asked this Court to abate the appeal in order for the trial court to make additional findings or conclusions.

We overrule his first point of error and overrule his motion to strike the supplemental transcript. Based on this record, we conclude Gus has not been deprived of his ability to properly present his case on appeal because of the trial court's late filing of its findings of fact and conclusions of law. *See* TEX.R.APP.P. 44.1. Thus, we refuse to remand this case or to abate the appeal.

### Right of De Novo Appeal to Referring Court

In his second and third points of error, Gus contends the trial court erred in finding his appeal of the associate judge's recommendations was not timely and in rendering judgment. Gus asserts he was deprived of his statutory right to a de novo appeal of the associate judge's recommendations before the referring court.

The authority and responsibilities of a family court master at the time of the parties' divorce proceeding were governed in part by former section 54.010 of the Texas Government Code.[8] That section provided:

(a) At the conclusion of any hearing conducted by a master and on the preparation of a master's report, the master shall transmit to the referring court all papers relating to the case, with the master's signed and dated report.

(b) After the master's report has been signed, the master shall give to the parties participating in the hearing notice of the substance of the report. The master's report may contain the master's findings, conclusions or recommendations. The master's report must be in writing in a form as the referring court may direct. The form may be a notation on the referring court's docket sheet.

(c) Notice of the right of appeal to the judge of the referring court shall be given to all parties. This notice may be given at the hearing or by posting the notice inside or outside of the courtroom of the referring court or otherwise as the referring court directs.

The language in former section 54.010 required that notice be given to the parties of the substance of the master's report and the right of appeal to the judge of the referring court. *Waddell v. Huckabee,* 807 S.W.2d 455, 458 (Tex.App.—Houston [1st Dist.] 1991, orig. proceeding).

Under the provisions of former sections 54.011 and 54.012 of the Government Code,[9]

---

8. Act of April 30, 1987, 70th Leg., R.S., ch. 148, § 2.74, 1987 Tex.Gen.Laws 534, 569, *repealed by* Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 2, 1995 Tex.Gen.Laws 113, 282 (current version at TEX.FAM.CODE ANN. § 201.015 (Vernon 1996)).

9. Act of April 30, 1987, 70th Leg., R.S., ch. 148, § 2.74, 1987 Tex.Gen.Laws 534, 569–70, *repealed by* Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 2, 1995 Tex.Gen.Laws 113, 282 (current ver-

a party had three days to appeal to the referring court after the master gave notice of the substance of his report, and if no party appealed, the referring court could adopt, approve, or reject the master's report. The associate judge read his findings into the record at the hearing on November 30, 1993, and signed a docket entry that same day. Gus did not file a notice of appeal from those findings until January 4, 1994, well outside the time limit.

■ Gus contends the associate judge did not prepare a written report, and therefore did not provide the parties with notice of the substance of his report. We disagree. Although a master's report must be in writing, former section 54.010(b) provided that it could consist of a notation on the trial court's docket sheet. In the instant case, the associate judge made such a notation. At the hearing on November 30, 1993, the associate judge pronounced the substance and details of his findings and recommendations in open court and on the record. Irene was present with counsel but Gus chose not to attend this hearing.[10] We do not agree that Gus should now be allowed to claim error when his unexplained, voluntary absence allegedly prevented him from receiving the substance of the master's report.

As noted above, the hearing on Irene's motion for entry of judgment on the final decree of divorce was originally set for December 15, 1993. On that date, the trial court signed an order to reset consideration of the motion for January 4, 1994. This order also states that as a pre-payment of her share of the community estate, Irene is to be granted all rights necessary to acquire possession of funds in a bank account pursuant to the court's "rendition" on November 30, 1993, the date the master announced his findings. Gus filed a motion to set aside the portion of this order concerning access to the bank account on December 16, 1993, but did not file a notice of appeal of the associate judge's findings at that time.

The trial court signed the final decree of divorce adopting the associate judge's recommendations on January 4, 1994, and it is stamped as "filed" at 2:20 p.m. Gus contends this was the first time he learned of any rulings on the case. This claim is belied by his earlier motion to set aside the trial court's order concerning Irene's access to the bank account. Further, Gus's notice of appeal from the master's recommendations was filed on January 4, 1994 at 2:25 p.m. and lists in detail his objections to the division and characterization of 25 different properties. Such an appeal could only have been prepared with full knowledge of how the associate judge had characterized and divided the properties.

■ Although apparently prepared in advance of the hearing, Gus's notice of appeal was filed with the trial court five minutes *after* the trial judge adopted the associate judge's findings by signing the final decree of divorce. Generally, if a proper objection to a master's recommendations and findings is not filed *before* those findings are adopted by the referring court, those findings become conclusive on the issues considered by the master. *Owens–Corning Fiberglas Corp. v. Caldwell,* 830 S.W.2d 622, 625 (Tex.App.—Houston [1st Dist.] 1991, orig. proceeding); *Novotny v. Novotny,* 665 S.W.2d 171, 173 (Tex.App.—Houston [1st Dist.] 1984, writ dism'd).

Gus relies on *Stein v. Stein,* 868 S.W.2d 902, 904 (Tex.App.—Houston [1st Dist.] 1994, no writ), and *Waddell,* 807 S.W.2d at 458, for his contention that we must reverse and remand to the trial court based on his contention that he was deprived of his right to a de novo appeal. We find both cases distinguishable on their facts.

In *Stein,* the parties entered into a settlement agreement that was initialed but not signed by an associate judge. 868 S.W.2d at 903. Before the referring court could sign the settlement, one of the parties revoked her consent to the agreement. *Id.* The court

sion at Tex.Fam.Code Ann. § 201.015(a) (Vernon 1996)).

**10.** Although the first page of the statement of facts from this hearing indicates Gus was present with counsel, the court reporter, Don G. Pylant, submitted an affidavit stating this notation was incorrect. Gus does not dispute this affidavit.

of appeals determined the associate judge never generated a *signed* report and therefore the provisions of former section 54.010 of the Government Code did not apply. *Stein,* 868 S.W.2d at 904. The court of appeals further held no rendition of judgment occurred until the referring court signed the settlement agreement, and because this came after one of the parties had revoked consent, the judgment was void. *Id.* In this case, the associate judge prepared a proper written report by making a signed entry on the trial court's docket sheet as permitted by former section 54.010.

In *Waddell,* the parties brought several discovery disputes before an associate judge. 807 S.W.2d at 457. The associate judge in *Waddell* heard argument, took the matters "under advisement," and made a docket notation reflecting the same. *Id.* at 458. The associate judge did not prepare written recommendations and this Court held the docket sheet entry was not sufficient to provide the parties with notice of the *substance* of the associate judge's report to the referring court. *Id.* In the instant case, at the hearing on November 30, 1993, the associate judge announced the substance of his findings in detail in open court and on the record. This hearing was sufficient to provide the parties with notice of the substance of his recommendations to the trial court.

Gus further argues the parties were not given the statutorily required notice of their right to appeal the master's findings and recommendations to the referring court. We note that the notice of the right to appeal may be given at the hearing when the associate judge pronounces his findings. The statement of facts from the November 30 hearing before the associate judge does not indicate the associate judge stated on the record that the parties could appeal his findings.

Former section 54.010 did not require that the notice of the right to appeal be given orally or in writing; it provided that notice could also be posted inside or outside the courtroom of the referring court, or as otherwise directed by the referring court. The record does not indicate and the parties do not comment on whether notice was posted in such a manner.

■■ Gus makes no claim that he was unaware of the November 30 hearing before the associate judge, yet he and his counsel chose not to appear. We decline to find error when Gus's own conduct may have prevented him from obtaining notice of his ability to appeal the associate judge's recommendations. In addition, it is apparent from the substance of Gus's notice of appeal that he was in fact aware of his right to appeal the master's findings well in advance of the trial judge's adoption of those findings. However, Gus did not file his notice of appeal from the master's findings until after the trial court adopted them; thus, he waived any error. Based on the circumstances of this case, we hold the trial court did not err in finding Gus's appeal of the associate judge's recommendations was untimely, and we overrule Gus's second and third points of error.

### Characterization and Division of Property

In his fourth and fifth points of error, Gus contends the trial court erred by mischaracterizing what he claims is his separate property as community property and then erred by awarding some of that property to Irene. The parties do not dispute that all the contested properties were acquired during the marriage.

■■ In a divorce proceeding, the trial court shall order a division of the estate of the parties in a manner it deems just and right. *See* former § 3.63 of the Family Code.[11] The trial court exercises wide discretion in the division of marital property and that discretion will not be disturbed on appeal unless it is shown the court has clearly abused its discretion. *Jacobs v. Jacobs,* 687 S.W.2d 731, 733 (Tex.1985); *Murff v. Murff,* 615 S.W.2d 696, 698 (Tex.1981); *John-*

---

11. Act of May 31, 1969, 61st Leg., R.S., ch. 888, § 1, 1969 Tex.Gen.Laws 2707, 2725, *amended by* Act of May 31, 1981, 67th Leg., R.S., ch. 712, § 1, 1981 Tex.Gen.Laws 2656, 2656, *repealed by* Act of April 3, 1997, 75th Leg., R.S., ch. 7, § 3, 1997 Tex.Gen.Laws 8, 43 (current version at Tex.Fam.Code Ann. § 7.001, 7.002 (Vernon Supp. 1998).

*son v. Johnson,* 804 S.W.2d 296, 299 (Tex. App.—Houston [1st Dist.] 1991, no writ). Only community property is subject to the trial court's division of the marital estate and in making its division the trial court may not divest one party of his separate property. *Cameron v. Cameron,* 641 S.W.2d 210, 220 (Tex.1982); *Eggemeyer v. Eggemeyer,* 554 S.W.2d 137, 141–42 (Tex.1977).

▮ Former § 5.01 of the Family Code provided:

(a) A spouse's separate property consists of:

(1) the property owned or claimed by the spouse before marriage;

(2) the property acquired by the spouse during marriage by gift, devise, or descent; and

(3) the recovery for personal injuries sustained by the spouse during marriage, except any recovery for loss of earning capacity during marriage.

(b) Community property consists of the property, other than separate property, acquired by either spouse during marriage.[12]

Property possessed by either spouse during or on dissolution of the marriage is presumed to be community property and clear and convincing evidence is required to establish that such property is separate property. *See* former § 5.02 of the Family Code.[13]

### 1. Characterization of Property

▮ To overcome the presumption of community property, the spouse claiming certain property as separate property must trace and clearly identify the property claimed to be separate. *Cockerham v. Cockerham,* 527 S.W.2d 162, 167 (Tex.1975); *McElwee v. McElwee,* 911 S.W.2d 182, 188 (Tex.App.—Houston [1st Dist.] 1995, writ denied). Mere testimony that the property was purchased with separate funds, without any

tracing of the funds, is generally insufficient to rebut the presumption. *McElwee,* 911 S.W.2d at 188.

Gus contends the trial court improperly designated several properties as community property that he claims are his separate property. Of the 11 properties Gus claims the trial court mischaracterized, five were awarded to Irene and six were awarded to him. The six properties awarded to Gus are referred to as: (1) 718 Boundary; (2) 2319 Freeman; (3) 2324 North Main; (4) a one-half interest in 11.8 acres in Montgomery County; (5) 4.9 acres in Liberty County; and (6) the mineral rights in some property in Lavaca County. The remaining five properties Gus contends were mischaracterized as community property were awarded to Irene. These properties are identified as: (1) 1202 Noble; (2) 417 Hogan; (3) 2224 North Main; (4) 421 East 26th; and (5) the "Yorktown property" including a mineral deed. Gus asserts the trial court erred in its findings of fact and conclusions of law concerning these 11 properties, specifically finding of fact number 20 and conclusions of law three, four, and five.

The trial court's finding of fact number 20 states:

Except for the deeds marked and admitted[14] ... each deed and conveyance is neutral as [a] true cash transaction and no deed or conveyance has any significant recitals which would identify them as separate property.

The trial court's conclusions of law numbers three through five state:

3. Except for the property awarded to [Gus] as his separate property there was no clear and convincing evidence that any other property was the separate property of either party and

---

12. Act of May 31, 1969, 61st Leg., R.S., ch. 888, § 1, 1969 Tex.Gen.Laws 2707, 2726, *repealed by* Act of April 3, 1997, 75th Leg., R.S., ch. 7, § 3, 1997 Tex.Gen.Laws 8, 43 (current version at Tex.Fam.Code Ann. § 3.001, 3.002 (Vernon Supp. 1998).

13. Act of May 31, 1969, 61st Leg., R.S., ch. 888, § 1, 1969 Tex.Gen.Laws 2707, 2726, *amended by*

Act of July 20, 1987, 70th Leg., 2nd C.S., ch. 50, § 5, 1987 Tex.Gen.Laws 159, 161, *repealed by* Act of April 3, 1997, 75th Leg., R.S., ch. 7, § 3, 1997 Tex.Gen.Laws 8, 43 (current version at Tex.Fam Code Ann. § 3.003 (Vernon Supp.1998).

14. The deeds referred to concern other properties not relevant to this point of error.

therefore the presumption of community property was no [sic] overcome.

4. The division of property in this cause is just and right considering the rights of the parties, the needs of their children, the relative earning capacity of the parties and the size and nature of the separate estate of [Gus].

5. Even if the court mischaracterized some property the division of the property is just and right under the circumstances of this cause.

Gus argues there is no evidence, or alternatively, factually insufficient evidence to support the court's finding of fact number 20 and conclusions of law three through five as related to the properties he claims were mischaracterized as assets of the community.

■ The issue of whether property is separate or community property is determined by the facts that, according to rules of law, give character to the property. *McElwee,* 911 S.W.2d at 188. To determine whether there is no evidence to support a finding, an appeals court considers only the evidence and inferences that support the finding and disregards all evidence and inferences that support the contrary. *Sherman v. First Nat'l Bank,* 760 S.W.2d 240, 242 (Tex. 1988); *Glockzin v. Rhea,* 760 S.W.2d 665, 666 (Tex.App.—Houston [1st Dist.] 1988, writ denied). If there is any evidence to support the finding, the appeals court must uphold it. *Sherman,* 760 S.W.2d at 242.

■ To determine whether the evidence was factually insufficient to support a finding, an appeals court considers and weighs all evidence that was before the trial court in determining whether the evidence is sufficient. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). An appeals court sets a finding aside only if it is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Cain,* 709 S.W.2d at 176. Similarly, a trial court's conclusions drawn from the facts may be reviewed to determine their correctness. *Herbage v. Snoddy,* 864

S.W.2d 695, 698 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

■ If the trial court mischaracterizes property, and that property has value that would have affected its division of the community estate, then the mischaracterization is harmful and we must remand the entire community estate to the trial court for a just and right division of the correctly characterized community property. *McElwee,* 911 S.W.2d at 189. However, if the mischaracterized property had only a *de minimus* effect on the trial court's division, then the trial court's error is not an abuse of discretion. *Id.*

We first examine the properties characterized as community assets and awarded to Gus.

### a. 718 Boundary [15]

■ Gus identified only two properties as community assets in his inventory; lots at 612 Quitman and 8831 Valley View. At trial, Gus testified he purchased an empty lot at 718 Boundary for $2,500 but did not recall whether the money used for the purchase was separate or community property because the account the money was drawn from contained commingled separate and community funds. Irene testified she listed the Boundary lot in her inventory as community property because Gus told her it was community property.

Richard Sedgeley, the attorney who assisted Gus in his real estate transactions, testified it was his opinion that the Boundary lot was Gus's separate property because the transaction to purchase the property was conducted in Sedgeley's office and he believed Gus used money he had inherited to purchase the property. Gus provided no documentation, such as bank records, to indicate whether the Boundary lot was purchased with separate funds.

■ The deed for the lot at 718 Boundary appears in the record and lists Gus as the grantee for $10 and "other valuable con-

---

**15.** This property is specifically identified in the divorce decree as:

Lot ten (10), block two (2) of outlet sixty-five (65) of the Allen Addition, an addition in Har-

ris County, Texas, according to the map or plat thereof recorded in Volume 160, Page 239 of the Deed Records of Harris County, Texas.

sideration." The deed contains no recitals that the sale was to Gus's separate estate. A deed executed and delivered during the marriage with no recital that the conveyance was to the separate estate of the grantee is presumptively community property. *Van Zandt v. Van Zandt*, 451 S.W.2d 322, 326 (Tex.Civ. App.—Houston [1st Dist.] 1970, writ dism'd).

The trial court found Gus did not present clear and convincing evidence to rebut the presumption that the 718 Boundary property was community property. The standard recitals of ownership in the deed and Gus's inability to trace the funds used to purchase the lot are evidence supporting the trial court's finding. Therefore, we conclude the trial court did not abuse its discretion in characterizing the 718 Boundary lot as community property.

### b. 2319 Freeman[16]

Gus testified he cared for several elderly persons, including Caroline Thomas, as part of his Christian ministry and helped transport them to church and elsewhere. He testified he cooked, cleaned, and washed for some of them but stated he never entered into an employment contract with any of them.

■ Gus testified he purchased the lot at 2319 Freeman for $27,000 with money he received as a gift from Thomas while she was alive. Irene again stated she listed the 2319 Freeman property as community property because Gus told her it was community property. Richard Sedgeley stated that, in his opinion, the 2319 Freeman lot was Gus's separate property because Gus purchased the property with money he *inherited* from Thomas's estate. The deed for this property does not appear to be included in the record before this Court. No documentary evidence was presented to trace the money used to purchase this property.

16. This property is specifically identified in the divorce decree as:
 LT [sic] 6[,] BLK [sic] 63–1 Allen, an addition in Harris County, Texas.

17. This property is identified in the divorce decree as:

■ Generally, the testimony of an interested party, when not corroborated, does not conclusively establish a fact even when uncontradicted. *Kirtley v. Kirtley*, 417 S.W.2d 847, 853 (Tex.Civ.App.—Texarkana 1967, writ dism'd). Uncorroborated evidence coming from one party is not conclusive. *Parmeter v. Parmeter*, 348 S.W.2d 51, 54 (Tex.Civ. App.—Dallas 1961, no writ); *see also Johnson v. Johnson*, 804 S.W.2d 296, 300 (Tex. App.—Houston [1st Dist.] 1991, no writ) (evidence not clear and convincing to rebut presumption of community when husband listed guns on inventory as inherited from father but made only two references at trial to "father's guns" and offered no other evidence to distinguish guns as separate property).

The trial court found Gus did not present clear and convincing evidence to rebut the presumption that the 2319 Freeman property was community property. The evidence presented concerning the nature of this property was, at best, conflicting. Accordingly, we conclude Gus did not present sufficient evidence to rebut the community property presumption, and the trial court did not abuse its discretion in characterizing the 2319 Freeman lot as community property.

### c. 2324 North Main[17]

■ Gus testified the lot at 2324 North Main was a gift to him from Caroline Thomas. As with most of the contested properties, Irene stated she believed the 2324 North Main property was a community asset because of representations made to her by Gus. Richard Sedgeley testified that in his opinion the 2324 North Main lot was Gus's separate property because Thomas gave the deed to Gus as a gift after her husband died. Sedgeley stated that to his knowledge, no consideration was given for the property. When first questioned, Sedgeley could not recall whether he had prepared the deed. He later testified he remembered preparing the deed for Thomas.

 Lot 4, Block 1, in the Subdivision of Large Lot or Block 63 of the Allen Addition to the City of Houston, Harris County, Texas, more commonly known as 2324 North Main Street....

The deed for the 2324 North Main property appears in the record, is signed by Caroline Thomas, and lists Gus as the grantee. The deed states the property was "granted, sold[,] and conveyed" for $10 cash and "other valuable consideration," but it does not list a specific amount. The deed does not contain any separate property recitals and does not indicate whether it was prepared by Sedgeley. On cross-examination, Gus admitted his name appears on the deed as the person the property was sold to.

The trial court found that Gus did not present clear and convincing evidence to rebut the community property presumption concerning the 2324 North Main property. In light of Gus's testimony and the language on the face of the deed, we conclude the finding is not so against the great weight and preponderance of the evidence as to be manifestly unjust, and the trial court did not abuse its discretion in characterizing the lot at 2324 North Main as community property.

#### d. The Montgomery County Property [18]

The trial court awarded Gus a one-half interest in an 11.8 acre lot in Montgomery County in its division of the parties' community property. Gus testified that Caroline Thomas owned a one-half interest in this lot and gave him $11,000 to purchase the other one-half interest. Concerning this property, Sedgley stated:

That too is his separate property; and the estate, that money was given to him by Mrs. Thomas to buy that property. He had a small interest or half interest or something; then she—somehow she acquired it and gave it to him.

Irene testified she thought this property was community property because she believed Gus earned it by working for Mrs. Thomas

and because Gus told her it was a community asset.

Two deeds, that together cover the entire 11.8 acres, appear in the record. The first deed is signed by Caroline Thomas and lists Gus as the grantee. According to this deed, Thomas "granted, sold[,] and conveyed" her one-half undivided interest in the 11.8 acres to Gus for $10 "and other good and valuable consideration" paid by him on May 19, 1981. The second deed is signed by Florence Edwards Brill and also lists Gus as the grantee. This deed states that Brill "granted, sold[,] and conveyed" her one-half undivided interest in the property for $10 "and other good and valuable consideration" paid by Gus on July 17, 1981.

Neither deed contains separate property recitals. The evidence presented by Gus did not clearly explain how he acquired the property and no evidence was presented to trace the money Gus claims Thomas gave him to purchase the property. The trial court found Gus did not present clear and convincing evidence to rebut the presumption of community property concerning the acreage in Montgomery County. We conclude the finding was not so against the great weight and preponderance of the evidence as to be manifestly unjust, and the trial court did not abuse its discretion in characterizing the 11.8 acres in Montgomery County as community property.

#### e. The Liberty County Property [19]

Gus testified he also cared for Ernestine and Daisy Lusher as part of his ministry. He transported them to church, and cooked and cleaned for the Lusher sisters, but stated he did not enter into an employment contract with them. Gus stated he acquired the two tracts of land in Liberty County from the Lushers. Gus described the property as

18. This property is identified in the divorce decree as:

A one-half (½) undivided interest in: Being 11.8274 acres of land in the C.F. Baumlin Survey, Abstract 105, Montgomery County, Texas, and being that all tract of land described in Deed to Albert Glazier, recorded in Volume 100, Page 477, Deed Records, Montgomery County, Texas....

19. This property is identified in the divorce decree as:

FIRST TRACT: All that certain lot or parcel of land lying and being situated in the County of Liberty, State of Texas, the same being a part of the A.W. Isaacks preemption....

SECOND TRACT: All that certain tract or parcel of land being a part of the East half of the A.B. Rozell League in Liberty County, Texas....

about 4.9 acres in size, and added, "[T]hat was a gift from the Lushers, maybe about $2,000." Gus did not explain the meaning of this $2,000 amount.

When questioned about the properties in Liberty County, Sedgley responded:

> I've searched everything I can. I can't find that, but I know that that [sic] came from the Lushers. I don't recall how that property was paid for. That was back 22, 23 years ago and I just can't remember that.

The deed for these properties appears in the record. The deed is signed by Ernestine Lusher, shows Gus as the grantee, and is dated April 22, 1970. It contains no separate property recitals and states that the property was "granted, sold[,] and conveyed" for $10 and "other good and valuable consideration."

■ The trial court found Gus did not present clear and convincing evidence to rebut the presumption that Liberty County properties were community property. There was no clear evidence presented concerning how these properties were acquired by Gus. Accordingly, we conclude Gus did not present sufficient evidence to rebut the community property presumption, and the trial court did not abuse its discretion in characterizing these tracts of land in Liberty County as community property.

**f. The Lavaca County Property Mineral Rights** [20]

Gus testified he also looked after a woman named Grace Seaver, cooked for her, and generally managed her affairs until her death in 1987. Gus stated that he inherited 537 acres of land in Lavaca County and approximately $100,000 from the Seaver estate after a will contest. On cross-examination, Gus admitted that in his deposition he stated he "gave 10 years of his life for that land."

Irene admitted that in her deposition she stated the land was given to Gus as a gift.

The deed for the 537 acres is signed by Grace Seaver and dated May 23, 1985. It states that all of Seaver's "right, title and interest in and to" the property was conveyed to Gus as his separate property. The trial court found the land was shown to be Gus's separate property, and neither party challenges this finding.

■ The deed does not specifically mention the disposition of any mineral rights to the property. Texas courts have long held that when the owner of the entire estate in land conveys it by a deed containing no exception or reservation, the grantee acquires the same title that the grantor had, including the rights to all minerals. *Harris v. Currie,* 142 Tex. 93, 176 S.W.2d 302, 304 (1943); *see Williams v. Jennings,* 755 S.W.2d 874, 879 (Tex.App.—Houston [14th Dist.] 1988, writ denied). Therefore, when the Lavaca County property was conveyed to Gus, whatever title or interest in the mineral rights of that property was held by Grace Seaver was also conveyed to Gus at that time.

■ In accordance with the evidence, the trial court determined that all the mineral rights associated with the 537 acres were the separate property of Gus. Additionally in the divorce decree, the trial court stated that the Lavaca County property mineral rights were Gus's separate property. Finding no contradictory evidence, we agree with the trial court's finding that the mineral rights from the 537 acres in Lavaca County are the separate property of Gus.

We next consider those properties Gus asserts were mischaracterized as community property that the trial court awarded to Irene in her share of the community estate.

---

**20.** This property is identified in the divorce decree as:

> All the mineral rights on the following 500 acres in Lavaca and Jackson County, Texas[,] property and on the 37.17 acres in Lavaca County, Texas:
>
> Item 1. 500 acres of land, more or less, situated in the J.H. Scott Survey, Abstract No. 576, Lavaca County, Texas[,] and Abstract No. 259,

> Jackson County, Texas[,] and the Patt Scott Survey, Abstract No. 407, Lavaca County, Texas[,] and Abstract No. 257, Jackson County, Texas. . . .
>
> Item 2. 37.17 acres of land, more of [sic] less, located in the J.J. May Svy., A–309, and being the same land conveyed by Lucy Turk to Grace Turk Seaver in that certain deed dated February 19, 1955. . . .

### g. 1202 Noble [21]

 Gus testified the Lusher sisters gave him $10,000 as a gift prior to their deaths and he used some of the money to purchase the property at 1202 Noble. In her inventory, Irene listed 1202 Noble as an asset of the community. She testified Gus worked for the Lushers and she thought the property was community property because Gus told her he bought it and that it "was ours."

As previously noted, a deed executed during marriage without separate property recitals is presumed to be community property. *Van Zandt*, 451 S.W.2d at 326. The warranty deed for the property at 1202 Noble lists the grantee as Gus and the consideration provided as $10 and "other good and valuable consideration." There is no recital in the deed that separate funds were used in the conveyance or that the conveyance was to the separate property of the grantee.

No other documentation or evidence was introduced to show the property was purchased with separate funds. The only evidence Gus presented was his own uncorroborated testimony that he used money received as a gift from the Lushers to purchase 1202 Noble.

The trial court found Gus did not present clear and convincing evidence to show that the 1202 Noble property was his separate property. The recitals of ownership in the deed and lack of other documentation are evidence supporting the trial court's finding that 1202 Noble was community property. Gus's testimony alone is not sufficient to rebut the presumption of community and the finding is not so against the great weight and preponderance of the evidence as to be manifestly unjust. Therefore, we conclude the trial court did not abuse its discretion in characterizing the 1202 Noble property as community property.

### h. 417 Hogan [22]

Irene also listed the property at 417 Hogan as community property in her inventory. Gus testified he bought the 417 Hogan property with some of the funds from a $40,000 oil bonus from property bequeathed to him by the Seaver family. Gus testified he paid approximately $8,500 for the 417 Hogan property. Irene testified Gus told her he purchased the property and she understood he did so with funds he earned by working. The deed for 417 Hogan shows Gus as the grantee and recites consideration as $10 and "other good and valuable consideration," but contains no recitals that the consideration came from separate property.

The absence of recitals in the deed and Irene's testimony are evidence supporting the trial court's finding that 417 Hogan was community property and the evidence presented by Gus concerning the nature of the property is not sufficient to rebut the community presumption. Accordingly, we hold the finding is not so against the great weight and preponderance of the evidence as to be manifestly unjust, and we conclude the trial court did not abuse its discretion by characterizing the 417 Hogan property as an asset of the community.

### i. 2224 North Main [23]

Irene included the 2224 North Main property as an asset of the community in her inventory. Gus testified he bought the property at 2224 North Main, a one-story commercial building, with money he received

21. This property is specifically identified in the divorce decree as:

Lot One (1), and the West Twelve Feet (W.12') of Lot Two (2), in Block Twenty Eight (28), of LITTLE ADDITION to the City of Houston, also known as LITTLE DICKINSON ADDITION, an addition in Harris County, Texas, according to the map or plat thereof recorded in Volume 1275, Page 175 of the Deed Records of Harris County, Texas.

22. This property is specifically identified in the divorce decree as:

Lot Eight (8), Block Forty[–]Four (44), Allen Addition[,] an addition in Harris County, Tex-

as, according to the map or plat thereof recorded in Vol. 1, Page 56, of the Map Records of Harris County, Texas. (a/k/a 417 Hogan, Houston, Texas).

23. This property is specifically identified in the divorce decree as:

Lots 1 and 2 and part of lots 3 and 16, Block 60–A of the Mrs. C.M. Allen's Addition as recorded in Volume 1, Page 79, of the Map Records in the County Clerk's office, Harris County, Texas.

from the Lusher estate. The record contains a copy of a check from Gus made payable to Texas Commerce Bank for $33,500 on March 19, 1974. Gus testified the check was used to purchase the 2224 North Main property. The check was drawn against an account at Texas Commerce Bank, but is not attached to any documentation explaining or supporting Gus's testimony that it was for the property at 2224 North Main. The record contains a deed for property located at 2324 North Main,[24] but does not contain the deed for 2224 North Main. The account the check was drawn against was designated by the trial court as community property and was awarded entirely to Gus. Gus does not contest the trial court's characterization of this account as community property. The canceled check does not conclusively show that Gus purchased the property with separate funds.

Richard Sedgeley testified that in his opinion the 2224 North Main property was Gus's separate property because Gus used funds he inherited from the Lusher estate to purchase the property. However, no copy of the will from either Lusher sister was presented into evidence.

 We conclude the evidence presented by Gus concerning the nature of the 2224 North Main property was not sufficient to rebut the presumption of community. Accordingly, we hold the finding is not so against the great weight and preponderance of the evidence as to be manifestly unjust and we conclude the trial court did not abuse its discretion by characterizing the 2224 North Main property as community property.

### j. 221 East 26th [25]

 Gus testified he inherited a one-half interest in the property at 221 East 26th from a bequest in the will of Mary Sutton. Gus added that the other one-half was left to a charity. He stated he later purchased this portion from the charity for $25,000 but could not remember where he got the money to do so. Gus's attorney, Richard Sedgeley, testified without objection that he knew Gus inherited one-half of the 221 East 26th property from Sutton because he had prepared Sutton's will. Sedgeley did not know what funds Gus used to purchase the remaining one-half. Sutton's will was not introduced into evidence. Gus did not include this property in his inventory either as separate or community property.

In her first amended inventory, Irene listed only a one-half interest in the 221 East 26th property as community property. However, at trial Irene testified to the following:

Q. And you're claiming that in this lawsuit in all the property, all of the real estate—you know what I mean by real estate?

A. Yes.

Q. That's land.

A. Yes.

Q. All the land that he [Gus] owns, your're claiming that's community property, aren't you?

A. Right.

Q. So all the land, he got that as a result of work he did or he earned it and got the land, is that your position in this case?

A. Yes.

 The trial court found this property to be community property in its entirety and awarded it all to Irene. This property is presumed to be community property because it was possessed ·by either spouse upon the dissolution of marriage. *See* former § 5.02 of the Family Code.[26] Although Sedgley testified that Gus inherited one-half of the property from Sutton's will, the will was not introduced into evidence nor was any other corroborating evidence presented. Additionally, even though Irene's inventory lists only one-half of the property as community prop-

---

**24.** As noted above, the 2324 North Main property was awarded to Gus.

**25.** This property is specifically identified in the divorce decree as:

Lots 13, 14, 15, and 16, in Block 31, in Sunset Heights Addition to the City of Houston, Harris County, Texas; more commonly referred to as 221 East 26th Street, Houston, Texas 77008.

**26.** *See* note 13.

erty, the inventory is not conclusive evidence of the property's character. *See Johnson v. Johnson,* 804 S.W.2d 296, 300–01 (Tex.App.—Houston [1st Dist] 1991, no writ). Based on the testimony, including Irene's oral claim to the property, we conclude the trial court did not abuse its discretion in finding that appellant did not rebut the community property presumption by clear and convincing evidence.

### k. Yorktown Property and Mineral Interest [27]

■ In her inventory, Irene listed the Yorktown property and an accompanying 25 percent mineral interest as community property. Gus testified he purchased the Yorktown property from Freda Collins in 1979 and paid $30,000 as a down payment on the property. He stated this down payment came from funds he inherited from the Lusher estate.

The deed for the Yorktown property appears in the record and lists the sale price at $120,000 with a down payment of $29,051.00. Gus added that a portion of the funds used to make the payments on this property came from money he inherited from the estate of Caroline Thomas but did not elaborate on other sources of funds for these payments. Thomas's will was not introduced into evidence. The warranty deed lists Gus as the grantee but does not contain any language to overcome the presumption of community property. Gus testified he believed a part of the Yorktown property was community property and that Irene had an interest in the property but did not clarify what portion he claimed was his separate property or explain the basis for this assertion. Gus also made no claim for reimbursement from the community for the separate property, if any, he used to pay for or improve the property.

The one-quarter interest in the minerals under the Yorktown property was purchased from Collins in 1982. The mineral deed lists Gus as the grantee and does not contain any language sufficient to overcome the presumption of community.

We conclude the trial court did not err in finding the evidence presented was insufficient to rebut the presumption that the Yorktown property and accompanying mineral interest were community property.

### 2. Division of the Marital Estate

As part of the argument presented in his fourth and fifth points of error, Gus contends the trial court's division of the marital estate was not a "just and right" division.

■ The role of an appellate court is only to determine whether the trial court abused its discretion in its disposition of the community property and an appellate court does not have the authority to render judgment dividing the marital property. *McKnight v. McKnight,* 543 S.W.2d 863, 866 (Tex.1976); *McElwee,* 911 S.W.2d at 189. We presume the trial court exercised its discretion properly. *Murff v. Murff,* 615 S.W.2d 696, 698 (Tex.1981). The trial judge may order an unequal division of the community property where a reasonable basis exists for doing so. *Vannerson v. Vannerson,* 857 S.W.2d 659, 668 (Tex.App.—Houston [1st Dist.] 1993, writ denied). However, if the trial court mischaracterizes separate property as community property, then the property does not get divided as part of the community estate. *See McElwee,* 911 S.W.2d at 189. If the mischaracterization is harmful as to the value of the division of property, then we must remand the entire community estate to the trial court for a just and right division of the properly characterized community property. *Id.* If on the other hand, the mischar-

27. This property and the accompanying mineral lease are identified in the divorce decree in part as:
> 212.93 acres of land, more or less, and being that certain tract or parcel of land originally containing 217.8 acres of land, more or less, described in Volume 133, Page 427, Deed Records, DeWitt County, Texas; said tract being a part of the C.G.H. Woods Survey, Abstract K# 482, LESS AND EXCEPT from said 217.8

> acre tract the following: The surface to 2.89 acres ... the surface to 0.61 acres ... and surface easement for road purposes only, to 1.37 acres. . . .
> An undivided twenty-five percent (25%) interest in all of the oil, gas, and other minerals in and under and that may be produced from the lands situated in the County of DeWitt, State of Texas. . . .

acterized property had only a *de minimis* effect on the trial court's just and right division, then the trial court's error is not and abuse of discretion. *Id.*

After a thorough examination of the record, we conclude the trial court did not abuse its discretion regarding the division of the real property. The record indicates a reasonable basis for the decisions of the trial court. Therefore, we overrule Gus's fourth and fifth points of error.

### Characterization and division of bank account

■ In his sixth and seventh points of error, Gus argues the trial court erred by characterizing a bank account as community. property and awarding one-half of the funds in the account to Irene. Gus contends the evidence is legally and factually insufficient to support the trial court's finding that the funds in the account were community property. As noted above, the property possessed by either spouse at the dissolution of the marriage is presumed to be community property. *See* former § 5.02 of the Family Code.[28] To rebut this presumption, a spouse must trace and clearly identify property claimed as separate property. *McElwee,* 911 S.W.2d at 188. If the evidence shows the parties' separate and community property have been so commingled as to defy resegregation and identification, the burden is not discharged and the statutory presumption will prevail. *McKinley v. McKinley,* 496 S.W.2d 540, 543 (Tex.1973); *McElwee,* 911 S.W.2d at 188.

The account concerned was held at Peoples State Bank in Halletsville, Texas. Gus did not include this account in any inventory filed with the trial court as either separate or community property. At trial, Gus testified that in the previous 10 years he had "more or less" one bank account. He further stated he had accounts at Texas Commerce Bank and Heights Savings and Loan and gave an account number as 8049791.[29] He stated that all the money he received and all the money he spent went into and out of one

account. When questioned by counsel for Irene, Gus specifically stated that "to [his] knowledge" he had no money at Peoples State Bank.

However, Stanley D. Bujnoch, a cashier with Peoples State Bank, testified that according to the bank's records, Gus opened an account several months before the trial on July 28, 1993, by depositing a personal check for the amount of $90,000 drawn against an account at First Victoria National Bank. The account was numbered 52–4057–3 and as of October 13, 1993, the time of trial, the funds in the account totalled $87,955.77. In its division of the marital estate, the trial court awarded Irene $43,977.88, approximately one-half of these funds.

■ Gus then testified the money used to open the account at Peoples State Bank came from the sale of stock, but did not explain what stocks were sold or what was the origin of the funds used to purchase these stocks. During closing argument, counsel for Gus stated: I think the cash money would have to be considered community property.... I have no argument regarding the commingling of the cash money. I don't think there's any question about that. We cannot differentiate there and trace it.

■ We conclude Gus did not present sufficient evidence to trace the funds used to open the account at Peoples State Bank as his separate property. In addition, by not contesting the presumption that the funds in this account were community property at the trial court, we hold Gus waived any complaint concerning their characterization on appeal. Tex.R.App.P. 33.1. Accordingly, we overrule Gus's sixth and seventh points of error.

We affirm the judgment of the trial court.

O'CONNOR, J., dissents.

O'CONNOR, Justice, dissenting.

I dissent on points of error two and three. We should reverse and remand for a trial de novo.

---

**28.** *See* note 13.

**29.** There was no evidence presented clarifying the account Gus was referring to by this number.

The version of Texas Government Code § 54.010 in effect at the time of this appeal was:

(a) At the conclusion of any hearing conducted by a master and on the preparation of a master's report, the master *shall transmit* to the referring court all papers relating to the case, *with the master's signed and dated report.*

(b) After the master's report has been signed, the master *shall* give to the parties participating in the hearing notice of the substance of the report. The master's report may contain the master's findings, conclusions or recommendations. The master's report must be in writing in a form as the referring court may direct. The form may be a notation on the referring court's docket sheet.

(c) Notice of the right of appeal to the judge of the referring court *shall* be given to all parties. This notice may be given at the hearing or by posting the notice inside or outside of the courtroom of the referring court or otherwise as the referring court directs.

TEX. GOV'T CODE § 54.010 (1998)[1] (emphasis added.)

Section 54.010 required the associate judge to give the parties (1) written notice of the substance of the master's report, and (2) notice of the right of appeal to the judge of the referring court. *Waddell v. Huckabee,* 807 S.W.2d 455, 458 (Tex.App.—Houston [1st Dist.] 1991, orig. proceeding). The associate judge did neither.

The majority seems to excuse the associate judge's errors by blaming Gus for not attending the hearing on November 30. The majority seems to imply that if Gus had been present at that hearing, the associate judge would have given him the required statutory notice. Nothing in section 54.010 exempts the judge from giving notice if one of the parties is not present at the hearing.

### Written Report

Gus Robles contends the associate judge did not prepare and sign a written report,

and therefore did not provide the parties with notice of the substance of his report. I agree. The majority holds that the docket notation "divorce granted per record" was sufficient under section 54.010(b) as a written report of the substance of the master's findings. I disagree. In *Waddell,* 807 S.W.2d at 458, we held:

The docket entry merely recites that a record was made and that the matter was taken under advisement.... [S]ince recommendations were not filed by the master, relator was deprived of her statutory right to appeal the findings, conclusion and recommendation of the master to Judge Huckabee.

Here, the associate judge did not file a written report with the trial court judge. Thus, the appellant was deprived of this statutory right to appeal the findings, conclusions, and recommendations of the master.

The majority holds the docket notation "granted per record" can transform the associate judge's oral statement at the hearing into a "written report." I do not believe the docket notation "granted per record" meets the statutory requirements of written report required by section 54.010. If the associate judge had written the substance findings on the docket sheet, only then would the docket sheet notation meet the section 54.010(c) requirements of a written report.

The majority ignores the holding of *Stein v. Stein,* 868 S.W.2d 902, 904 (Tex.App.—Houston [14th Dist.] 1994, no writ) by simply stating that the difference between the two cases was that the associate judge in this case "did prepare a proper written report by making a signed entry on the trial court's docket sheet." That holding again assumes that the notation "divorce granted per record" is the same as a written report.

### Notice of Right to Appeal to Referring Court

Gus Robles contends the associate judge did not give him notice of his right to appeal to the referring court. I agree.

1. Act of April 30, 1987, 70th Leg., R.S., ch. 148, § 2.74, 1987 Tex.Gen.Laws 534, 569, repealed by

Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 2, 1995 Tex.Gen.Laws 113, 282.

The majority notes that the associate judge could have given notice of the right to appeal by one of three ways: oral notice, written notice, or by posting a written notice inside or outside of the referring court. The majority admits the associate judge did not make an oral statement on the record regarding the notice of the right to appeal. However, the majority states that the record does not show if a notice of the right to appeal was posted. If the notice of appeal had been posted, the posting itself would have been in writing. If it had been in writing, either of the parties could have secured a copy of the written notice that was posted and included it in the record. There is no written notice of the right to appeal in this record.

The majority's actual holding is that when a party does not appear at a hearing, the party waives the statutory requirements of the notice of right to appeal contained in section 54.010. The only problem with that holding is there is no support for it in the case law or in section 54.010.

The majority seems to fault Gus for filing a detailed notice of appeal on January 4, 1994, the same day the trial court adopted the master's report and rendered judgment. The majority concludes that Gus must have had some notice of the associate judge's findings because the notice of appeal was a detailed challenge to those findings. I agree that Gus filed a detailed notice challenging the master's findings on January 4, but that is not the issue. The issue is *when* Gus learned about the master's finding—did he learn about the findings in time to file a timely notice of appeal? The answer is no.

Under the provisions of the Family Code, Gus was required to file a notice of appeal within three days from the date of the associate judge's report, that is by December 3, 1993. The only document in the record that contains the associate judge's findings is the reporter's record from the November 4, 1993 hearing. The court reporter transcribed the record from that hearing on December 7, 1993, four days after the deadline for Gus to file notice of appeal. Thus, Gus learned the details of the associate judge's findings when it was too late for him to file a timely notice of appeal. The notice of appeal Gus filed on January 4, 1994, has no bearing on the issue of whether Gus received timely notice of the associate judge's findings.

I would reverse and remand for a trial de novo.