

NUMBER 13-13-00124-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JESSICA PULLIN CANCINO,                                    Appellant,

v.

JUAN MANUEL CANCINO,                                       Appellee.

### On appeal from the 135th District Court
### of Refugio County, Texas.

# MEMORANDUM OPINION

### Before Justices Garza, Benavides, and Perkes
### Memorandum Opinion by Justice Benavides

By two issues, appellant, Jessica Cancino appeals the trial court's determination of custody of her two minor children. Appellant argues: (1) the trial court's delayed findings of fact and conclusions of law did not allow her to effectively present her appeal or ask for amended and additional findings of fact and conclusions of law; and (2) the trial

court's award of custody to her ex-husband was not in the children's best interest. We affirm.

## I. BACKGROUND

Jessica and Juan Cancino married on September 3, 2010. Their two children were born prior to their marriage[1]. Juan filed for divorce on July 1, 2011. After their separation in 2011, the Texas Department of Family and Protective Services ("CPS") investigated Jessica for allegations of drug use and neglect of her children. While under investigation, Jessica had to complete substance abuse counseling, have supervised visits with her children, and attend anger management classes and programs. CPS did not investigate Juan.

On July 7, 2011, both parties signed a Rule 11 Agreement that named them joint managing conservators of their children. Juan and Jessica agreed to a modified possession order in which each parent would get the children on a four-day rotating schedule, which coincided with their days off from work. Jessica was to continue to abide by the CPS requirements until they were terminated.

In the summer of 2011, Jessica began dating Preston Mascorro, who was incarcerated in the Texas Department of Criminal Justice for murder and other serious offenses. Based on conversations with his children, Juan determined they knew about Mascorro's incarceration and they were told by Jessica to write letters to him and speak on the phone with him. In addition, Jessica had taken the children on trips to Amarillo to visit Mascorro at his prison unit. Upon learning this information, Juan asked the trial

---

[1] Juan and Jessica's two children were born in 2008 and 2009.

court for a modification to the Rule 11 Agreement, specifically requesting that the children have no contact with Mascorro. The trial court granted Juan's request.

The parties later participated in a bench trial to determine custody of the children. Juan and Jessica both testified. At the conclusion of the trial, the trial court named Juan and Jessica joint managing conservators and granted Juan the exclusive right to determine the primary residence of the children. Jessica was named possessory conservator and ordered to pay child support in the amount of $600.32 monthly. The trial court also included an injunction in its final orders, issued on December 14, 2012, prohibiting the children from seeing, hearing from, receiving information about, or communicating with Mascorro.

On January 3, 2013, Jessica filed a request with the trial court for findings of fact and conclusions of law. On February 7, 2013, she filed a past due notice for findings of fact and conclusions of law. Although the trial court still had not filed its findings of fact and conclusions of law, Jessica filed a notice of appeal on March 3, 2013. On June 11, 2013, this Court abated the appeal and ordered the trial court to make its findings and conclusions. On June 27, 2013, the trial court filed its findings of fact and conclusions of law. Jessica's appeal was reinstated on July 15, 2013, and a supplemental record was submitted by the district clerk's office. Jessica did not file her brief until September 18, 2013.

## II. BELATED FINDINGS OF FACT AND CONCLUSIONS OF LAW

By her first issue, Jessica argues that she was harmed by the trial court's delayed findings of fact and conclusions of law by not being able to properly present her appeal and not being able to request amended or additional findings.

3

## A.    Standard of Review

When the trial court files belated findings, the only issue is whether the appellant was harmed.    *Robles v. Robles*, 965 S.W.2d 605, 610 (Tex. App.—Houston [1st Dist.] 1998, pet. denied).    Without harm, "litigants have no remedy if a trial court files untimely findings and conclusions."    *Id.*    "Injury may be in one of two forms: (1) the litigant was unable to request additional findings, or (2) the litigant was prevented from properly presenting his appeal."    *Id.* (citing *Jefferson County Drainage Dist. v. Lower Neches Valley Auth.,* 876 S.W.2d 940, 956-60 (Tex. App.—Beaumont 1994, writ denied)); *see also Morrison v. Morrison*, 713 S.W.2d 377, 381 (Tex. App.—Dallas 1986, writ dism'd). If harm is shown, "the appellate court may abate the appeal so as to give the appellant the opportunity to request additional or amended findings in accordance with the rules." *Id.* (citing *McShan v. Pitts*, 538 S.W.2d 266, 266 (Tex. Civ. App.—San Antonio 1976, no writ) (per curiam)).

## B.    Discussion

Appellant alleges she was harmed by the delay in the filing of the trial court's findings of fact and conclusions of law because she had to "guess at the specific reason why the trial court awarded Juan primary custody of the children."    However, a review of the procedural timeline in this case shows the opposite.

By the time her brief was filed with this Court, the findings of fact and conclusions of law had been on file for almost three months.    Jessica had submitted no previous briefs.    She did not have to "guess" at the reasons the trial court ruled against her because they were available to her when she prepared her appellate brief.

4

Jessica also alleges that she was harmed because she was unable to request amended or additional findings of fact or conclusions of law. Under Texas Rule of Civil Procedure 298, any party can ask for specified additional or amended findings of fact or conclusions of law within 10 days after the original findings are filed. *See* TEX. R. CIV. P. § 298. The initial findings were filed by the trial court on June 27, 2013; therefore, any party could have requested specific additional findings before July 8, 2013, but neither party did. Jessica's appeal was not reinstated by this Court until July 15, 2013. Even after July 15, 2013, either party could have requested additional findings. *Robles*, 965 S.W.3d at 611 ("a trial court may file additional findings even after it loses plenary power to affect the judgment.") (citing *Morrison v. Morrison*, 713 S.W.2d 377, 381 (Tex. App.— Dallas 1986, writ dism'd). The "failure of a party to request additional or amended findings or conclusions waives the party's right to complain on appeal about the presumed finding." *Gentry v. Squires Constr., Inc.*, 188 S.W.3d 396, 408 (Tex. App—Dallas 2006, no pet.). Therefore, because Jessica's brief was filed months after the trial court issued its findings and conclusions and she did not request any additional findings from the trial court at any time, we cannot say she was harmed by the trial court's untimely findings.

### III. FINDINGS AGAINST THE BEST INTEREST OF THE CHILD

By her second issue, Jessica argues that the trial court erred when it named Juan the custodial parent.

### A. Standard of Review and Applicable Law

In cases involving child custody, the "judgment of the trial court will be reversed only when it appears from the records as a whole that the court has abused its discretion." *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982). The "test for abuse of discretion

5

is whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable." *In re H.S.N.*, 69 S.W.3d 829, 831 (Tex. App.—Corpus Christi 2002, no pet.) (citing *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990)).

"The trial court is given wide latitude in determining the best interests of a minor child." *Gillespie*, 644 S.W.2d at 451 (citing *Leithold v. Plass*, 413 S.W.2d 698, 701 (Tex. 1967)). The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child. TEX. FAM. CODE ANN. § 153.002 (West, Westlaw through 2013 3d C.S.). The "trial court's judgment regarding what serves the best interest of the child with regard to child support and visitation, specifically the establishment of terms and conditions of the conservatorship, is a discretionary function of the trial court and will only be reversed upon a determination that the trial court has abused its discretion." *In re. H.S.N.*, 69 S.W.3d at 831 (citing *MacCallum v. MacCallum*, 801 S.W.2d 579, 582 (Tex. App.—Corpus Christi 1990, writ denied)). "This is because the trial court is in the best position to observe the demeanor and personalities of the witnesses and can feel forces, powers, and influences that cannot be discerned by merely reading the record." *Id.* (citing *In re T____*, 715 S.W.2d 416, 418 (Tex. App.—Dallas 1986, no writ)).

There are numerous factors the trial court can use to determine what is in the best interest of a child. Included in these are:

> "(A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the emotional and physical danger to the child now and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to assist these individuals to promote the best interests of the child; (F) the plans for the child by these

6

individuals or by the agency seeking custody; (G) the stability of the home or proposed placement; (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse for the acts of omissions of a parent."

*Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976).

## B.     Discussion

The trial court determined the issues of child custody and child support after a bench trial on those issues.   Both Jessica and Juan testified at the bench trial.   Both attorneys and the trial judge questioned them.   Juan testified that he has had a stable job for six years.   Juan has a work schedule that allows him to work four days on and four days off.   Juan's mother cares for the children when he cannot.   Juan testified generally about a CPS case against Jessica regarding substance abuse and neglect towards her children.   As a result of the investigation, Jessica had to take substance abuse treatment classes, anger management classes, and have supervised visitation with her children.   Juan testified at length about Jessica's boyfriend, Mascorro.   According to Juan, Mascorro has called Juan multiple times from prison and threatened him.   Juan also testified that his children said that Jessica has told them to speak to Mascorro on the phone and in letters in violation of the trial court's order.   Juan felt he was the parent who could best care for his children.

Jessica also testified at the bench trial.   She told the trial court she also has a "four-day on" and "four-day off" work schedule as well.   She met Mascorro through his brother after he was incarcerated.   She stated she had gone to see him thirty to forty times since they met in 2011.   She did not believe the prior injunction protecting her children was necessary.   She also stated that if the trial court imposed an injunction in

7

its final order, she would not want to obey the injunction but would for her children. Jessica testified that Mascorro could be a father-figure to her children and that she plans to marry him at some point. Jessica also told the trial court the current visitation schedule would not work because it fatigues her children.

The trial court issued findings of fact and conclusions of law in determining Juan to be the primary conservator. It is clear from those findings that the trial court considered Jessica's investigation by CPS as a determining factor. The trial court also explicitly stated that Jessica's relationship with Mascorro was a relevant factor in its determination. The trial court found that Jessica was "not acting in the best interest of the children when she allowed them to have contact with Preston Mascorro." Because Jessica told the court she planned to continue her relationship, the trial court made an appropriate determination to place the children with their father.

Since the trial court issued findings of fact and conclusions of law that spell out the reasons for its decision, and because these reasons are clear, supported by the record, and not arbitrary or unreasonable, Jessica has not shown that the trial court abused its discretion. *See In re HSN*, 69 S.W.3d at 831.

## IV.    CONCLUSION

We affirm the trial court's judgment.


                                    GINA M. BENAVIDES,
                                    Justice

Delivered and filed the
7th day of May, 2015.